No. 24077. June 16, 1948.
Appellant's Motion for Rehearing Denied (Without Written
Opinion) October 13, 1948.

Hon. David McGee, Judge Presiding.

*H. R. Bishop,* of Fort Worth, for appellant.

*Alfred M. Clyde,* Criminal District Attorney, and *J. Elwood Winters* and *W. E. Myres,* Assistant Criminal District Attorneys, all of Ft. Worth, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Appellant was convicted of the murder, with malice, of Paul McCullough, the assessed punishment being five years in the penitentiary.

We state only such facts as are deemed necessary for a determination of the main question presented.

Camp Joy, situated on the shore of Lake Worth in Tarrant County, is a combination of tourist cabins, cafe, dance hall, and beer tavern. The cabins are to the side of the dance hall and beer tavern, the nearest cabin being about eighty-four feet away. What is referred to as a "dock"—about two hundred feet from the tavern—leads out into the lake. Appellant and his wife resided in one of the cabins. About eight o'clock on the night of November 16, 1946, deceased and his wife, accompanied by another couple, entered the tavern and were seated at a table along one of the sides of the building. About two hours thereafter, appellant, his wife, and their party entered the tavern and were seated at a table across the room from where deceased and his party were seated. It appears that, some time thereafter, a member of deceased's party made some noise or sound or said some word which might be termed a "rasberry," to which appellant's wife took exception. An argument and near fisticuffs ensued between the parties, which was stopped by the owner of the tavern. Shortly thereafter, appellant, his wife, and their party left the tavern through the front door and went to his car parked near the tavern. Deceased left the tavern about the same time through a rear door.

Up to this point, the facts are not in material dispute. According to the State's theory, after deceased left the building appellant attacked him and deceased fled. Appellant overtook deceased and stabbed him in the chest and back with a knife. Whether this stabbing occurred before or after the parties ran out to the dock is not clear from the State's testimony. At any and all events, both appellant and deceased either fell or jumped into the water from the dock. As a result of the injuries inflicted, deceased died shortly after he was found on the dock. According to the State's theory, the killing was without justification or excuse.

According to the defensive theory, the testimony shows that appellant, his wife, and their party left the tavern to get into their automobile; that a member of the party of deceased attacked appellant and that deceased attacked appellant's wife, knocking her down, and appellant pursued him out onto the dock, when deceased turned upon him and attacked him with a knife; and that appellant struck and stabbed the deceased with a knife in self-defense. As a result of, or during the struggle,

both parties fell from the dock into the water. Appellant pulled deceased from the lake and laid him on the dock.

Touching the events occurring at the car at the time appellant claims he was attacked by a member of deceased's party and his wife knocked down by deceased, appellant testified as follows:

"I didn't see Paul McCullough out there until I got up and he was knocking my wife down and hauled off and kicked her once that I know and hit her once; it knocked her down. I helped my wife up and said, 'Which way did he go.' He broke and run. Either my wife or some one there, I don't remember which one, said he *down* down that way, that is going west. That is the direction going by Faulkner's home to the west dock."

"I taken after him and run him clear on down to Mr. Faulkner's house. He went on the dock immediately and I went on out on the dock; I was after him."

Appellant further testified, in effect, that the reason he chased deceased was because he was "trying to catch him and hold him until the law could get there and arrest him for jumping on my wife."

It is appellant's contention that, under the facts stated, he was entitled to have the jury instructed to the effect that he had the right to pursue and arrest the deceased for the aggravated assault committed by deceased upon his (appellant's) wife and to use such force as was reasonably necessary to arrest and hold deceased for the officers.

The trial court refused to so instruct the jury or to incorporate in his charge an instruction upon appellant's right to arrest the deceased. A proper exception was reserved to the charge, in keeping with appellant's contention.

A determination of the question thus presented rests upon the construction to be given Art. 212, C. C. P., which reads as follows:

"A peace officer or any other person, may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an 'offense against the public peace.'"

Under said article, one not a peace officer may arrest with-

out warrant an offender who has committed an "offense against the public peace" in his presence or within his view.

According to appellant's testimony, the deceased committed in his presence and within his view the misdemeanor offense of aggravated assault upon the wife of appellant.

Such offense not being a felony, the application of Art. 212, C. C. P. is made to depend upon whether that offense constituted a breach of the peace.

In Head v. State, 131 Tex. Cr. R. 96, 96 S. W. (2d) 981, we adopted, from Corpus Juris, the following:

" 'The term "breach of the peace" is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquillity enjoyed by the citizens of a community; a disturbance of the public tranquillity by any act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm disturbs the peace and quiet of the community. By "peace," as used in this connection, is meant the tranquillity enjoyed by the citizens of a municipality or a community where good order reigns among its members. Breach of the peace is a common-law offense. It has been said that it is not a specific offense, yet it may be, and at times is, recognized as such by statute or otherwise; and only when so regarded will it be considered in this article.

" 'The offense may consist of acts of public turbulence or indecorum in violation of the common peace and quiet, of an invasion of the security and protection which the laws afford to every citizen, or of acts such as tend to excite violent resentment or to provoke or excite others to break the peace. Actual or threatened violence is an essential element of a breach of the peace. Either one is sufficient to constitute the offense. Accordingly, where means which cause disquiet and disorder, and which threaten danger and disaster to the community, are used, it amounts to a breach of the peace, although no actual personal violence is employed. Where the incitement of terror or fear of personal violence is a necessary element, the conduct or language of the wrongdoer must be of a character to induce such a condition in a person of ordinary firmness.' "

After said quotation, we there concluded:

"Our own statutes and the case decided thereunder sustain the idea that to be a breach of the peace the act complained of must be one which disturbs or threatens to disturb the tranquillity enjoyed by the citizens."

In 11 Corpus Juris Secundum, p. 818, it is said:

"Whether or not a given act or state of conduct amounts to a breach of the peace depends upon the circumstances attending the act."

Obviously, therefore, the surrounding facts and circumstances under which the act is committed must be looked to in determining if same constitutes a breach of the peace.

It is under the rules stated that we must determine whether or not the act of deceased in assaulting appellant's wife constituted a breach of the peace. In reaching a conclusion, we are to determine only if there be testimony from any source which would authorize that conclusion, inasmuch as appellant raised the question as a matter of defense.

According to appellant's testimony, he and his wife and their party had left the tavern and were in the act of getting into an automobile and leaving, when the deceased, without justification or excuse, assaulted his wife by striking and kicking her, all in the immediate presence of the parties as well as those in and around the tavern. Such act of violence occurred in a public place, and deceased fled immediately thereafter.

It is this claimed unprovoked assault by a man upon a woman in a public place and in the presence not only of her husband but of others that brings the act of deceased within the definition of a breach of the peace.

While it may be true that the tranquillity or peace had already been disturbed in the tavern yet, according to appellant's version, this disturbance had ceased and he and those with him were preparing, in a peaceful manner, to leave. The conditions surrounding and immediately present at the time of the alleged assault by deceased are controlling.

In the light of what has been said, the conclusion is reached that the assault by deceased on appellant's wife, under the circumstances shown, constituted a breach of the peace.

The remaining question, then, is whether appellant was authorized to pursue and arrest deceased for that offense.

The State relies upon the case of Satterwhite v. State, 112 Tex. Cr. R. 574, 17 S. W. (2d) 823, as supporting the trial court's ruling.

In that case, the accused and deceased engaged in a fist fight in a public place and in the presence of witnesses, during which the deceased cursed and used abusive language. After the fight had ceased, accused went to his office, secured a pistol, and then hunted up a deputy sheriff and advised him of the offense committed and asked his assistance in arresting deceased. He went with the deputy sheriff to his home, where he also secured a pistol. He and the deputy sheriff, thus armed, entered a store, where deceased had gone after the difficulty, for the purpose of arresting deceased. A difficulty there ensued, during which accused shot and killed deceased. Accused claimed that he shot in self-defense. Approximately five minutes had elapsed from the time the fight ended until the accused and the deputy sheriff entered the store to make the arrest. The right to arrest was claimed by reason of the fact that an offense involving a breach of the peace had been committed by deceased in the presence of the accused. In submitting the case to the jury, the trial court instructed upon the law of self-defense but limited that defense by instructing the jury in connection therewith that said defense was unavailing unless accused had a warrant for the arrest of the deceased at the time. The evidence was undisputed that they had no warrant for arrest. Hence, the charge of the court had not only the effect of destroying the right of self-defense but also of holding, as a matter of law, that the attempted arrest of the deceased at the time was illegal. The conclusion reached by this court was that an offense involving a breach of the peace had been committed in the presence of the accused but that his right to arrest for that offense without a warrant was destroyed because of the five-minute interval between the commission of the breach of the peace and the attempted arrest, and that, by reason thereof, the attempted arrest was illegal. Such conclusion was based upon the general proposition that the legislature, having extended the right to pursue and arrest without warrant in order to insure the apprehension and trial of the offender only to felony offenses, precluded that right in misdemeanor cases.

The rule of law established by the Satterwhite case, then, appears to be that the right of a private individual to arrest without warrant for a breach of the peace, committed in his

presence or view, is limited to the time the offense is committed or while there is continuing danger of its renewal, and does not include the right to pursue and arrest for the purpose of insuring the apprehension or future trial of the offender.

The Satterwhite case was cited with approval in Rodriquez v. State, 146 Tex. Cr. R. 206, 172 S. W. (2d) 502.

In the instant case, appellant's testimony shows that his purpose in pursuing the deceased was to "catch him and hold him until the law could get there and arrest him for jumping on my wife." In other words, appellant was pursuing deceased and was attempting to arrest him in order to insure his apprehension and trial for the offense committed upon his wife. Appellant thereby brought himself squarely within the rule stated and the holding in the Satterwhite case. It must be remembered in this connection that the breach of the peace had already occurred and deceased was fleeing from the scene. There was nothing to suggest that the breach of the peace might be renewed or continued or that appellant's pursuit of deceased was to prevent a renewal of the offense.

From what has been said, the conclusion is expressed that appellant's pursuit and attempted arrest of the deceased was illegal and unauthorized and that the trial court did not err in refusing the appellant's requested instructions.

The trial court required the jury, in order to convict, to find the existence of an intent to kill on the part of the appellant. The absence of the use of the word "specific" in connection with that intent was not necessary or required.

No reversible error appearing, the judgment of the trial court is affirmed.

Opinion approved by the Court.