**Kenneth J. ESTES, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–83–143–CR.**

Court of Appeals of Texas,
Fort Worth.

Nov. 16, 1983.

Rehearing Denied Dec. 14, 1983.

Gary A. Udashen, Dallas, for appellant.

Henry Wade, Dist. Atty., and Tom Streeter, Asst. Dist. Atty., Dallas, for the State.

ment of the parties. *Id.* It follows that such a power may not be conferred on the courts by a

party's failure to object.

## OPINION

ASHWORTH, Justice.

Appellant was charged by complaint filed in the County Criminal Court of Appeals in Dallas County with the offense of disorderly conduct. The complaint charged that one Kenneth J. Estes

> did unlawfully then and there intentionally and knowingly in a public place, to wit: Grand Prairie High School, make an offensive gesture and display to wit: extending his middle finger of his right hand to Phillip M. Farris, principal of said school, during the commencement exercises on May 29, 1981 and said gesture and display tended to incite an immediate breach of the peace.

Appellant was convicted of the offense by a jury and was fined the sum of $125.00 by the court.

Judgment affirmed.

Appellant was charged with disorderly conduct under TEX.PENAL CODE ANN. § 42.01(a)(2) (Vernon Supp. 1982–1983), which reads:

> (a) A person commits an offense if he intentionally or knowingly: . . .
>
> (2) makes an offensive gesture or display in a public place, and the gesture or display tends to incite an immediate breach of the peace; . . .

The first ground of error relied upon by appellant is that there was insufficient evidence to support the verdict of guilty. In view of this contention, it is essential that we review the evidence in some detail.

Appellant was a member of the graduating class of Grand Prairie High School of 1981 and graduation ceremonies for that class were held at the football field adjacent to the school campus in Grand Prairie on May 29, 1981.

Phillip M. Farris, principal of Grand Prairie High School, was handing out diplomas to the graduating seniors and was assisted in this task by two or more assistant principals. Farris would shake hands with each senior as his or her name was called and hand that person his or her diploma. When Estes' name was called, he approached Farris to receive his diploma, shook hands with him, accepted his diploma, then, at a distance of not more than a few inches from the principal's face, extended the middle finger of his right hand under Farris' nose.

Farris testified that he was familiar with the gesture, that he had seen it before, although not under those circumstances, and that it meant "F___ you." Three other witnesses called by the State also testified that they had seen the gesture made by appellant and all of them also testified that the gesture was commonly understood to convey that meaning.

The principal further testified that his reaction was one of shock and anger, but that he resisted an "animal instinct to retaliate." He also testified that there was no violence, or fights, and that though some looks and glances were exchanged among the faculty as well as among the students, there was no actual physical disturbance, and that the ceremony proceeded to conclusion.

Farris said he didn't know what Estes' motivation for the gesture was, but assumed he was expressing some feeling of irritation, displeasure, or hatred toward Farris and the school. Farris, who filed the complaint against Estes several weeks after the incident, said he was prosecuting Estes because "he committed a very offensive gesture in our community and to me personally." He felt that Estes' actions were done at an inappropriate place and in an inappropriate way.

Three other witnesses, Antonio J. Lawrence, an assistant principal, Kelly White, a graduating senior, and Jean Price, a teacher at the high school, all of whom witnessed this incident, testified and all generally corroborated Farris' testimony as to the gesture and the after effects. All of them testified that the gesture was personally repulsive and obnoxious to them individually. All of these three other witnesses confirmed the fact that there was no violence after this incident. These witnesses, as did

Farris, simply described the reaction of the audience, or at least those of the audience who actually saw the gesture, as one of disgust, disbelief, shock and anger. These three witnesses also testified that the gesture had the same meaning to them as it had to Farris.

The generally accepted definition of breach of the peace, and the one used by the court in this case, includes the admonition to the jury that "[a]ctual or threatened violence is an essential element of a breach of the peace." *Woods v. State,* 152 Tex. Cr.R. 338, 213 S.W.2d 685 (1948). Section 42.01(a)(1) and (2) proscribe "fighting words" or acts in a public place. Much of the language in the subdivisions comes from *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), which first formulated the "fighting words" exception to the first amendment's free speech guarantee. *Chaplinsky* upheld a New Hampshire statute which prohibited any person from addressing any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name. Chaplinsky was convicted for calling another on a public sidewalk "a God damned racketeer", and "a damned Fascist and the whole government of Rochester are Fascists or agents of Fascists." The United States Supreme Court upheld this conviction, holding that the statutory language "offensive, derisive or annoying word" was limited to "fighting words".

Since *Chaplinsky,* decided in 1942, the United States Supreme Court has continued to recognize each state's constitutional power to punish "fighting words" under carefully drawn statutes where such words are not susceptible of application to protected expression. *See Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

In *Jimmerson v. State,* 561 S.W.2d 5 (Tex. Cr.App.1978), the Court of Criminal Appeals, by way of dicta, indicated that as to § 42.01(a)(4), relating to abuse or threatening of a person in a public place in an obviously offensive manner, the legislature intended that anything short of "fighting words" would not be a violation of that section because the section was enacted and became effective January 1, 1974, well after the decisions in *Gooding, supra,* and *Chaplinsky, supra,* had clarified the law on the subject of disorderly conduct statutes.

We must determine if the gesture in this case, under all of the attendant circumstances, amounted to "fighting words". In making such determination, we must consider the gesture as being directed to an average person and not necessarily Principal Farris. *Chaplinsky, supra.*

While Farris testified that he did not attack Estes, and under no circumstances would have attacked him or retaliated physically, he still had to resist his "animal instinct to retaliate." Farris was a professional in the field of adolescent education who had developed his emotional self-control as a part of his position as a high school principal. Under the same circumstances, we hold such gesture to an average person could have constituted "fighting words". It is not the function of this court to substitute its finding for that of the jury. There was sufficient evidence to justify the jury's finding of guilty. Appellant's first ground of error is overruled.

█ In his second ground of error, appellant contends the trial court erred in failing to grant his specially requested charge. In his third ground of error, appellant contends the trial court erred in overruling his objection to the charge on guilt-innocence.

Since appellant argues these two grounds of error together, we will address them the same way.

Appellant requested the following charge:

An immediate breach of the peace means that the defendant's actions caused or were highly likely to cause actual violence.

In order to find the defendant guilty, you must find beyond a reasonable doubt that the defendant's actions caused or

were highly likely to cause actual violence.

The charge given in this case is as follows:

You are instructed that the term "breach of the peace" includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community; a disturbance of the public tranquility by an act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm disturbs the peace and quiet of the community. By "peace," as used in this connection, is meant the tranquility enjoyed by the citizens of a municipality or a community where good order reigns among its members. *Actual or threatened violence is an essential element of a breach of the peace.* [Emphasis added.]

We find no fault with the appellant's requested charge; however, this does not mean that it was error to submit the charge in question. We note that the charge given is taken from *Head v. State,* 131 Tex.Cr.R. 96, 96 S.W.2d 981 (1936) and *Woods, supra.* The charge given required the jury to find actual or threatened violence. The charge requested would have required a finding the gesture caused or was highly likely to cause actual violence. We hold the charge given was essentially the same as that requested, and the charge given did not deprive appellant of a fair trial. Appellant's second and third grounds of error are overruled.

Judgment affirmed.

HILL, J., not participating.

JORDAN, Justice, dissenting.

I respectfully dissent.

Appellant was charged with disorderly conduct under TEX.PENAL CODE ANN. § 42.01(a)(2) (Vernon Supp.1982–1983) which reads:

(a) A person commits an offense if he intentionally or knowingly: ...

(2) makes an offensive gesture or display in a public place, and the gesture or display tends to incite an immediate breach of the peace; ...

As noted by the majority, the generally accepted definition of "breach of the peace", and the one used by the trial court in this case, includes the admonition to the jury that *"[a]ctual or threatened violence is an essential element of a breach of the peace."* [Emphasis added.] *Woods v. State,* 152 Tex.Cr.R. 338, 213 S.W.2d 685, 687 (1948).

*Jimmerson v. State,* 561 S.W.2d 5 (Tex. Cr.App.1978), clearly indicates that the use of anything short of "fighting words" does not constitute a violation of the statute. *See also Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Under the evidence in this record and the circumstances of this case, the gesture made by appellant did not constitute "fighting words" which tended to incite an immediate breach of the peace. Appellant's ground of error asserting the insufficiency of the evidence should be sustained.

The principal, Mr. Farris, testified that his reaction was one of shock and anger, but that he did not attack Estes, and under no circumstances would he have attacked Estes or retaliated physically. He also admitted that there was no violence, no fights, and no indication of fights or violence, and that though some looks and glances were exchanged among the faculty as well as among the students, there was no actual disturbance of any kind. According to Farris' testimony, the ceremony proceeded peacefully to its conclusion.

Three other witnesses confirmed the fact that there was no violence nor any threat of violence following appellant's conduct. These witnesses, as did Farris, simply described the reaction of the audience, at least those of the audience who actually saw the gesture, as one of disgust, disbelief, shock, and anger. One of these witnesses, a student, testified that there was "not a realistic possibility of a fight breaking out" and

that this was a common gesture used all the time.

The State, in its brief, attempts to argue that this gesture toward Farris advocated the personal carnal knowledge of Farris, and that it "impliedly denied the normality of Mr. Farris' sexual desires and practices". The State says that the gesture questioned the normality of the sexual desires and practices of anyone who submitted himself to employment in such a degenerate organization as the Grand Prairie Independent School District. In oral argument, the State tried to contend that this gesture had homosexual implications against the person toward whom it was directed.

These arguments seem rather extreme and unfounded and evidence the State's need to impute greater meaning to appellant's gesture than actually existed. The gesture had no personal sexual connotations, normal or otherwise, to Farris or to anyone else present at this ceremony. It was simply a tasteless expression of appellant's negative opinion of the principal of his high school and probably of the whole school.

While I certainly do not condone appellant's foolish, childish, and totally repulsive conduct, I do not think that the evidence offered by the State was sufficient to satisfy the controlling burden of proof in this case. The State was required under § 42.-01(a)(2) to prove that the gesture *tended to incite an immediate breach of the peace.* Even viewing the evidence in the light most favorable to the verdict, it falls short of the requisite proof.

This is not to say that the giving of the infamous "finger salute" will not, in any case, constitute "fighting words" or will not, in any case, tend to incite an immediate breach of the peace under the statute. I would simply hold that given the circumstances at the time this gesture was made and the evidence of the reaction to the gesture, appellant's conduct, reprehensible as it was, did not cause or even tend to cause or incite an immediate breach of the peace.

The judgment should be reversed and the trial court ordered to dismiss the disorderly conduct complaint against appellant.

Joined by SPURLOCK, J.