**Mari Lou ROSS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–89–01352–CR.**

Court of Appeals of Texas, Dallas.

Nov. 26, 1990.

Mari Lou Ross, pro se.

Teresa Tolle, Dallas, for appellee.

Before STEWART, OVARD and BURNETT, JJ.

## OPINION

BURNETT, Justice.

Mari Lou Ross appeals her conviction of disorderly conduct. After a trial before the municipal court, the court assessed a fine of $150. Ross appealed the decision to the Dallas County Criminal Court of Appeals No. 1, which affirmed the trial court decision. In three points of error, Ross claims that her trial counsel rendered ineffective assistance, that the municipal court should have quashed her complaint, that the statute under which the State charged her is unconstitutionally vague, that the words she used were not fighting words or of such a nature as to incite the addressee to immediate violence, and that a fatal variance existed between the pleadings and the proof. We overrule Ross's three points of error and affirm the trial court's judgment.

## FACTS

Ross attends El Centro College. On February 17, 1988, at approximately 12:00 noon, Ross and two classmates went to room 156B to meet with their instructor and attend a lecture. Curtis L. Ivory, then vice-president of instruction at the college, testified at trial that one of the lecture panel participants stopped the lecture because of the noise level outside the open doorway. In an attempt to remedy the situation, Ivory asked Ross, who stood outside the doorway, to either come in or go out and close the door. Ross refused. She responded to Ivory in a belligerent manner, using extremely loud, abusive, and profane language. The more Ivory talked with Ross, the louder she got, and the more verbally abusive she became. Finally, Ivory called campus security. Campus Security Officer Joy Mills responded to Ivory's call concerning the disturbance. After Ivo-

ry identified Ross as the person causing the disturbance, Officer Mills approached her and told her that she would like to talk with her. Officer Mills testified that Ross was very upset and was directing profane and abusive language at Ivory. Officer Mills testified that the words and phrases Ross used toward Ivory included mother fucker, asshole, and fuck you.

Ross voluntarily accompanied Officer Mills back to the security office, which was located within the business office. Once they reached the business office, Officer Mills asked Ross to step into the inner security office. Ross refused and became more disruptive. At that point, the chief of security for the college, Thurman Randall, came out to ask what was happening. Ross began to fight, yell, and curse, using very profane and abusive language similar to that used earlier. Officer Mills and Chief Randall each took one of Ross's arms, escorted her into the security office, handcuffed her hands behind her back, and then called the Dallas police. The Dallas police placed Ross under arrest, placed their handcuffs on her, and escorted her to jail. Ivory and Chief Randall testified that room 156B was a place accessible to a substantial group of the public. The campus security officers also stated that the business office was accessible to the public.

At trial, Ross testified that, at 11:40 a.m., when she and two classmates, Ruby Collins and Roger Courtney, attempted to enter room 156B to attend a lecture, Ivory barred their way. He only reluctantly stepped aside to let them in after they explained that they had come to hear the lecture. When the students saw that the lecture had not yet begun, they stepped back out into the hall to wait for their instructor. Ross stated that Ivory hostilely told her to enter the room or leave because she was being disruptive. When Ross failed to respond, she stated Ivory repeated himself in a meaner tone. Finally, Ross left but returned about ten minutes later. At that time Ivory had Officer Mills with him. Ross stated that, after she told Officer Mills her name, Officer Mills called her a "goddam lying bitch." Ross then voluntarily accompanied Officer Mills to the securi-

ty office where Officer Mills again asked Ross her name and again called her a "bitch." Ross stated no one ever asked her to go into the back room. Instead, Chief Randall, "who was hiding in the backroom," came out, picked her up, and threw her into the room, after which the two officers beat her with their fists in her stomach, where she had recently undergone surgery, and then handcuffed her. Ross alleged that they both took turns choking her and that Officer Mills broke her left arm. She also alleges that Officer Mills scratched her face and grabbed her ponytail and yanked her head back as hard as she could. When the Dallas police arrived, Ross stated the security officers told them to charge her with whatever they wanted to and that they would back them 100 percent. Ross denied the use of any profanity during this entire episode. Ross agreed that room 156B was a place readily accessible to a substantial group of the public.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In her first two points of error, Ross contends that her trial counsel rendered her ineffective assistance. Ross identifies four instances of alleged ineffective assistance of counsel. She alleges that (1) her counsel waived the jury trial she had requested without her consent, (2) her counsel referred to the hearing as "the ancient legal doctrine of the CYA," (3) material witnesses for Ross were prevented from attending the trial "by force and fraud," and (4) her counsel did not enter her plea until after the first State's witness had begun her testimony.

■ A defendant's right to effective assistance of counsel merely ensures her the right to reasonably effective assistance. The right does not mean errorless counsel. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex. Crim.App.1984). To establish ineffective assistance of counsel, the defendant must show (1) a deficiency in his counsel's performance and (2) that the deficiency prejudiced his defense. *Hernandez v. State,*

726 S.W.2d 53, 57 (Tex.Crim.App.1986) (adopting test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). First, the court must determine whether defense counsel's acts or omissions were outside the range of professional competent assistance. *Washington v. State*, 771 S.W.2d 537, 545 (Tex.Crim.App.1989). Second, the court must determine whether, but for counsel's unprofessional errors, a different outcome to the proceeding would have occurred. A reasonable probability of a different outcome means a probability sufficient to undermine confidence in the outcome. *Moore v. State*, 700 S.W.2d 193, 205 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986). To determine whether a defendant has received adequate assistance, this Court must look at the totality of the representation rather than isolated acts or omissions of the trial counsel. We apply the test as of the time of trial and not through hindsight. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986). The defendant must prove ineffective assistance of counsel by a preponderance of the evidence. *Moore v. State*, 694 S.W.2d 528, 531 (Tex.Crim.App. 1985).

### Waiver of Jury Trial

In her first claim of ineffective assistance, Ross alleges that her counsel waived without her consent the jury she had requested. The defendant in a misdemeanor case has the same right to a trial by jury as a defendant charged with a felony. *Franklin v. State*, 576 S.W.2d 621, 623 (Tex.Crim.App.1978). However, unlike in felony cases, no requirement exists that the defendant submit a written waiver of jury trial. *Lamb v. State*, 409 S.W.2d 418, 420 (Tex.Crim.App.1966). A recitation in the judgment that the defendant appeared in person and waived his right to trial by jury sufficiently establishes a presumption of regularity and truthfulness, which the court should not set aside lightly. Only an affirmative showing that the defendant executed no waiver will overcome this presumption of regularity and truth. *Lopez v.*

*State*, 708 S.W.2d 446, 447–48 (Tex.Crim. App.1986).

A review of the record shows that Ross waived her right to a jury trial. Prior to trial, Ross completed a plea form requesting a trial by jury. However, at trial Ross twice informed the court that she waived her right to a jury trial. Further, the judgment recites that the trial took place before the court because Ross waived her right to a jury trial. The record fails to show affirmatively that Ross did not execute a waiver of her right to a jury trial. Therefore, she failed to rebut the presumption of regularity and truthfulness in the judgment. Ross not only fails to show a deficiency in her counsel's actions in this instance, she also fails to show how the alleged deficiency prejudiced her defense.

### Trial Strategy

Ross's second claim of ineffective assistance centers upon a comment made by her attorney during his closing argument. His argument in pertinent part proceeded as follows:

THE COURT: [defense counsel], anything further?

[DEFENSE COUNSEL]: Yeah, Judge, two things: One, I think the reason we're here is because of the *ancient legal document [sic] of the CYA.* There's a possibility of a civil suit. And I think some of the principals involve [sic] realize that. And that remains to be seen what happens.

(Emphasis added.) We interpret this argument as impugning the State's motives in bringing this action. It was clearly trial strategy for defense counsel to question the State's motives. This court will not inquire into matters of trial strategy unless from all appearances there still is no plausible basis in strategy or tactics for counsel's actions. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex.Crim.App. [Panel Op.] 1981). We are not in a position to "second guess," through appellate hindsight, the strategy adopted by counsel at trial. *Faz v. State*, 510 S.W.2d 922, 926 (Tex.Crim. App.1974). Further, Ross fails to cite to authority or otherwise show how this com-

ment by her attorney showed deficient performance or prejudiced her defense.

### Presentation of Witnesses

 Ross's third ineffective assistance claim alleges that, because of ineffective assistance of counsel, material witnesses were prevented by force or fraud from attending court and presenting evidence that established her innocence. A defendant may base an ineffective assistance claim on an attorney's failure to present witnesses only if the defendant can show that the witnesses were available and their testimony would have benefitted the defendant. *Hunnicutt v. State,* 531 S.W.2d 618, 625 (Tex.Crim.App.1976); *Pinkston v. State,* 744 S.W.2d 329, 332 (Tex.App.— Houston [1st Dist.] 1989, no pet.).

 Ross attached an affidavit to her motion for new trial. The affidavit gave a list of fifteen persons whom she had contacted and who had indicated that they might have knowledge about the matter in controversy. In her affidavit, she stated that she had asked each of these potential witnesses if they had seen or heard her commit the offense of disorderly conduct on the date and at the time in question and that each had replied in the negative. The record also contains affidavits from three of the potential witnesses. These affidavits state that they saw the Dallas police escort Ross out of the building and that "no commotion occurred or words were uttered" at that time.

Assuming the contents of the potential witnesses' affidavits contain the matter that they would have testified to at trial, Ross fails to show how this information would have helped her defense. All three of the State's witnesses testified to actions that took place prior to the time the three affiants saw Ross. Further, Ross makes no showing that any of the fifteen people listed were available as witnesses or that they would have testified to a viable defense. Ross also fails to cite to any place in the record to substantiate her claim that these witnesses were prevented by fraud or force from appearing at the hearing.

### Entering of Plea

 Finally, Ross claims ineffective assistance because the court did not hear her plea until after the first witness began her testimony. At trial, the court can cure any error that results from not reading the indictment and not entering a plea. Upon learning of the error, the court reads the indictment to the jury, allows the accused to enter a plea, and then the State reintroduces the evidence already heard or the parties may stipulate to the evidence. *Warren v. State,* 693 S.W.2d 414, 416 (Tex. Crim.App.1985).

In this case, shortly after the first witness started to testify, the court realized that Ross had yet to enter a plea. Accordingly, the court stopped the proceedings, allowed Ross to enter her plea, and the State to reintroduce the evidence. By following the required procedures, the court cured any error that may have resulted from the court's failure to allow Ross to enter a plea prior to the beginning of the witness's testimony.

### Conclusion

After reviewing the totality of the counsel's representation, we find that his acts or omissions were not outside the range of professional competent assistance and that a different outcome would not have occurred but for his actions. Accordingly, we overrule Ross's first and second points of error.

### ERRORS RAISED ON APPEAL IN COURT BELOW

In her multifarious third point of error, Ross contends that the County Criminal Court of Appeals erred in overruling the seven points of error raised before that court and now urges again those same seven points of error here. She argues that the municipal court should have quashed the complaint, that the statute under which the State charged her is unconstitutionally vague, that the words she used were not fighting words or of such a nature as to incite the addressee to immediate violence, and that a fatal variance existed between the pleadings and the proof.

### Motion to Quash

Ross contends that the municipal court erred in not quashing the complaint. She argues that the complaint failed to allege that a person or persons were present and that it failed to list the names of the people who heard the profane language.

 Article 45.01 of the Code of Criminal Procedure states the requirements for a complaint filed in a municipal court. *See* TEX.CODE CRIM.PROC.ANN. art. 45.01 (Vernon 1981); *Rose v. State*, 799 S.W.2d 381, 383 (Tex.App.—Dallas 1990, no pet.) (not yet reported). The complaint by which the State charged Ross meets all the requirements of article 45.01. The complaint tracks the statute under which the State charged Ross, and neither the statute nor the Code of Criminal Procedure requires that the complaint allege that a person or persons were present or requires a list of the person or persons present who heard the profanity. *See* TEX.PENAL CODE ANN. § 42.01(a)(1) (Vernon 1989); TEX.CODE CRIM. PROC.ANN. art. 45.01 (Vernon 1981). Accordingly, we agree with the County Criminal Court of Appeals that the municipal court correctly overruled Ross's motion to quash.

### Constitutionality of the Statute

Next, Ross contends that the statute under which the State charged her is unconstitutionally vague. She argues that the statute is vague because it contains the phrase "abusive, indecent, profane or vulgar language" and describes the proscribed language as that which "by its very utterance tends to incite an immediate breach of the peace."

 A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that the statute forbids the contemplated conduct and if it encourages arbitrary and erratic arrests and convictions. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). To determine whether the doctrine applies, the court uses a two-step process. First, the court determines if the law gives a person of ordinary intelligence fair warning of the prohibited act. Second, the court determines if the law provides explicit standards for enforcement by those who apply them. *See Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). However, if the literal scope of the statute impinges upon a First Amendment freedom, the doctrine demands a greater degree of specificity than in other contexts. *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). On the other hand, the right of free speech is not absolute at all times and under all circumstances. Specifically, fighting words, which are those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace, may be prohibited consistent with the constitution. Fighting words include profanity, obscenity, and threats. A statute narrowly drawn to define and punish specific conduct lying within the domain of state power, such as the use in a public place of words likely to cause a breach of the peace, is not unconstitutionally vague. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–74, 62 S.Ct. 766, 768–70, 86 L.Ed. 1031 (1942). However, the Supreme Court has refused to uphold on grounds of vagueness statutes not limited in scope to fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace. *See City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 2511, 96 L.Ed.2d 398 (1987); *Gooding v. Wilson*, 405 U.S. 518, 523, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972).

 The statute under which the State charged Ross reads in pertinent part:

§ 42.01. **Disorderly Conduct**

(a) A person commits an offense if he intentionally or knowingly:

 (1) uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace.

TEX.PENAL CODE ANN. § 42.01(a)(1) (Vernon 1989). Texas courts have either directly or by implication held that various subparts of section 42.01 apply only to fighting words.

*See Jimmerson v. State,* 561 S.W.2d 5, 7 (1978) (section 42.01(a)(4) by implication applies only to fighting words); *Estes v. State,* 660 S.W.2d 873, 875 (Tex.App.—Fort Worth 1983, pet. ref'd) (subsections 42.-01(a)(1) and (2) proscribe fighting words or acts in public places). Recently, the Texas Attorney General has specifically stated that section 42.01(a)(1) "applies only to speech which as a matter of fact constitutes fighting words." Op.Tex.Att'y Gen. No. JM–900 (1988). Further, Texas courts have also defined and interpreted the term breach of the peace to mean an act that "disturbs or threatens to disturb the tranquility enjoyed by the citizens." *Woods v. State,* 152 Tex.Crim. 338, 213 S.W.2d 685, 687 (1948) citing *Head v. State,* 131 Tex. Crim. 96, 96 S.W.2d 981, 982 (1936)).

The statute at issue is narrowly drawn to give a person of ordinary intelligence a fair warning that the State prohibits the use of fighting words in a public place. Further, the statute's very words provide explicit standards for enforcement by only limiting the use of these words in public places when they disturb or threaten to disturb the tranquility enjoyed by the citizens. Accordingly, the statute is not too vague for a criminal law.

### Language Used

■ Ross further contends that the State failed to introduce sufficient evidence to establish that the language she allegedly used was of such a nature and under such circumstances as to be likely to incite the addressee to immediate violence. When determining whether the evidence is sufficient to support the conviction, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Marroquin v. State,* 746 S.W.2d 747, 750 (Tex.Crim.App.1988); *Garrett v. State,* 682 S.W.2d 301, 304 (Tex.Crim.App. 1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985). Fighting words are those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace. *Chaplinsky,* 315 U.S. at 572, 62 S.Ct. at 769. They

include profane, obscene, and threatening words. *Id.* at 573, 62 S.Ct. at 770. The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. *Gooding,* 405 U.S. at 523, 92 S.Ct. at 1106.

■ A review of the record establishes that the State introduced sufficient evidence to show that Ross's words not only tended to incite a breach of the peace, but that she actually did incite a breach of the peace. The words she used are what men of common intelligence would understand to be words likely to cause an average addressee to fight. Ivory testified that the lecturer had to stop speaking because of Ross's disturbance. Further, Ross's use of extremely loud, abusive, and profane language led Ivory to call campus security. Officer Mills testified that she heard Ross direct profane and abusive language at Ivory using such words and phrases as "mother fucker, asshole, and fuck you." Finally, Ross's continued use of such language, after Officer Mills took her to the security office, caused the campus security officers to call the Dallas police and led directly to her arrest.

### Variance

■ Finally, Ross contends that a fatal variance exists between the pleadings and the proof. She argues that the State failed to prove that the offense occurred in a portion of a public building to which the public or a substantial group of the public has access.

The Penal Code defines public place to mean "any place to which the public or a substantial group of the public has access and includes, but is not limited to, . . . the common areas of schools. . . ." Tex.Penal Code Ann. § 1.07(a)(29) (Vernon 1974). A review of the record shows that the State met its burden of proof. Ivory, Chief Randall, and Ross herself all testified that room 156B was a place accessible to the public. Ivory and Officer Mills both testified that Ross used profane language and caused a disturbance outside the doorway of room 156B. Logically, an area directly

outside the doorway of a place accessible to the public and within the school is a common area of the school and is also an area accessible to a substantial group of the public. Accordingly, the State established that Ross engaged in disorderly conduct in an area accessible to a substantial group of the public as alleged in the pleadings.

### Conclusion

The complaint used to charge Ross fully met the requirements of the Code of Criminal Procedure. Further, the statute at issue gives fair notice of the prohibited conduct and does not encourage arbitrary arrests and convictions. Finally, the State provided sufficient evidence that Ross's conduct incited a breach of the peace in an area accessible to a substantial group of the public. Accordingly, we overrule Ross's third point of error.

We affirm the trial court's judgment.