TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00690-CR






Robert Lee Coggin, Appellant


v.


The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF CALDWELL COUNTY

NO. 29,925, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING





O P I N I O N




 Robert Lee Coggin appeals his conviction for the offense of disorderly conduct. A
jury found that he intentionally or knowingly made an offensive gesture by raising his middle finger
in a public place, which tends to incite an immediate breach of the peace. See Tex. Pen. Code Ann.
§ 42.01(a)(2) (West 2003). In his first three points of error, appellant contends that his conviction
should be overturned because the statute is unconstitutional: facially unconstitutional by
impermissibly restricting protected free speech, void for vagueness and overbreadth, and
unconstitutional as applied by punishing protected free speech. In his fourth and fifth points of error,
appellant challenges the legal and factual sufficiency of the evidence. For the reasons stated below,
we reverse the judgment of conviction and render a judgment of acquittal.


BACKGROUND


 On October 25, 2001, appellant was driving in the left lane south on Colorado Street
(U.S. Highway 183) in Lockhart. Appellant's vehicle was a white car with spotlights on the side and
handcuffs hanging from the rearview mirror. Appellant came upon another vehicle in the left lane
that was traveling more slowly. There is nothing in the record to show that other persons or
automobiles were present. Appellant proceeded to tailgate the car, flash his headlights, and motion
for the car to move into the right lane so that he could pass. The other vehicle was driven by twenty-two-year-old John Pastrano, a jailer with the Caldwell County Jail; his wife, Robin, was a passenger. 
Pastrano, thinking that he was being pulled over by an unmarked police car, moved into the right
lane. As appellant passed Pastrano's car, he allegedly gestured with his raised middle finger--or
"shot the bird" (1)--at Pastrano and his wife.

 Pastrano, who testified that the incident "made [him] angry," called 911 and made
a report of reckless driving. Officer James Cowan with the Lockhart Police Department responded
to the dispatch and pulled appellant over soon after the call. After speaking with Pastrano, who had
been called to the scene by the dispatcher, Cowan issued appellant a citation for the class C
misdemeanor of "disorderly conduct - gesture." Appellant pled not guilty and initially waived a jury
trial and counsel. He later retained counsel and in a one-day jury trial on October 21, 2002, was
found guilty of the offense of disorderly conduct and fined $250.


ANALYSIS

 That this conviction rests upon the unseemly gesture alone is clear from the charging
instrument. Thus, appellant was not accused of threatening or otherwise endangering others on the
road, or of reckless driving or tailgating. Nor does the State contend that the conduct is obscene. 
Appellant was charged solely with disorderly conduct by the gesture of extending his middle finger.


Constitutionality of Texas Penal Code Section 42.01(a)(2)

 In his first and second points of error, appellant contends that section 42.01(a)(2) is
unconstitutional on its face because it impermissibly proscribes rights of free speech and expression
protected by the First and Fourteenth Amendments to the United States Constitution and Article I,
section 8 of the Texas Constitution and is also vague and overbroad. Ordinarily, we do not reach
constitutional issues unless necessary. We will nevertheless discuss these points of error in the
interest of fully addressing the parties' primary arguments.

 Before addressing the substance of appellant's constitutional claims, we conclude that
we need not address appellant's Texas constitutional claims. Appellant has proffered no argument
or authority concerning the protection afforded by the Texas Constitution or how that protection
differs from the protection afforded by the United States Constitution. State and federal
constitutional claims should be argued in separate grounds, with separate substantive analysis or
argument provided for each ground. Muniz v. State, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993);
Heitman v. State, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991). We will not make
appellant's state constitutional arguments for him. Muniz, 851 S.W.2d at 252.

 We begin with the presumption that a statute is constitutional. Tex. Gov't Code Ann.
§ 311.021(1) (West 1998). A facial challenge to the constitutionality of a statute imposes a heavy
burden because the challenger must establish that no set of circumstances exists under which the act
would be valid. Briggs v. State, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990); Ex parte Anderson,
902 S.W.2d 695, 699 (Tex. App.--Austin 1995, pet. ref'd).

 The statute under which appellant was charged provides:


§ 42.01. Disorderly Conduct


(a) A person commits an offense if he intentionally or knowingly:


 (2) makes an offensive gesture or display in a public place, and the gesture or
display tends to incite an immediate breach of the peace.



Tex. Pen. Code Ann. § 42.01(a)(2). The First Amendment prohibits laws that abridge freedom of
speech. (2) U.S. Const. amend. I. There are, however, certain classes of speech that are not afforded
the protection of the First Amendment. "Fighting words" are one such class of speech, which are
"personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of
common knowledge, inherently likely to provoke violent reaction." Cohen v. California, 403 U.S.
15, 20 (1971). Texas courts have uniformly held that section 42.01 applies to fighting words. 
Jimmerson v. State, 561 S.W.2d 5, 7 (Tex. Crim. App. 1978) (holding that section 42.01(a)(4), by
implication, applies only to fighting words); Duran v. Furr's Supermarkets, Inc., 921 S.W.2d 778,
785 (Tex. App.--El Paso 1996, writ denied) (holding that section 42.01(a)(1) applies only to fighting
words); Ross v. State, 802 S.W.2d 308, 314-15 (Tex. App.--Dallas 1990, no pet.); Estes v. State,
660 S.W.2d 873, 875 (Tex. App.--Fort Worth 1983, pet. ref'd) (holding that section 42.01(a)(1) and
(2) apply only to fighting words). Accordingly, we hold that the conduct proscribed under section
42.01(a)(2) falls within the "fighting words" exception and does not violate rights of free speech and
expression protected by the First and Fourteenth Amendments to the United States Constitution. We
overrule appellant's first point of error.

 Concerning appellant's second point of error challenging the constitutionality of
section 42.01(a)(2) for vagueness and overbreadth, a statute is unconstitutionally vague if it fails to
give a person of ordinary intelligence fair notice that the statute forbids the contemplated conduct
and if it encourages arbitrary and erratic arrests and convictions. Papachristou v. City of
Jacksonville, 405 U.S. 156, 162 (1972). To determine whether the doctrine applies, we use a
two-step process. First, we determine if the law gives a person of ordinary intelligence fair warning
of the prohibited act. Second, we determine if the law provides explicit standards for enforcement
by those who apply them. See Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). However,
if the literal scope of the statute impinges on a First Amendment freedom, "the doctrine demands
a greater degree of specificity than in other contexts." Smith v. Goguen, 415 U.S. 566, 573 (1974). 
On the other hand, the right of free speech is not absolute at all times and under all circumstances. 
A statute is impermissibly overbroad when, "'in addition to proscribing activities which may
constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by
the First Amendment.'" Bynum v. State, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989) (quoting
Clark v. State, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984)).

 A statute narrowly drawn to define and punish specific conduct lying within the
domain of state power, such as the use in a public place of words likely to cause a breach of the
peace, is not unconstitutionally vague. Chaplinsky v. New Hampshire, 315 U.S. 568, 571-74 (1942). 
However, the Supreme Court has struck down statutes not limited in scope to fighting words that by
their very utterance inflict injury or tend to incite an immediate breach of the peace. See City of
Houston v. Hill, 482 U.S. 451, 462 (1987); Gooding v. Wilson, 405 U.S. 518, 523 (1972).

 Appellant urges that section 42.01(a)(2) is vague and overbroad because it does not
define "offensive gesture or display," "incite," "immediate," or "breach of the peace." A statute is
not unconstitutionally vague merely because it fails to define words or phrases. Engelking v. State,
750 S.W.2d 213, 215 (Tex. Crim. App. 1988); Ahearn v. State, 588 S.W.2d 327, 338 (Tex. Crim.
App. 1979). Statutory words are to be "read in context and construed according to the rules of
grammar and common usage." Tex. Gov't Code Ann. § 311.011(a) (West 1998). When words are
not defined in a statute, they are ordinarily given their plain meaning unless the statute clearly shows
that they were used in some other sense. Daniels v. State, 754 S.W.2d 214, 219 (Tex. Crim. App.
1988); Ely v. State, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979). Words defined in dictionaries
with meanings so well known as to be understood by a person of ordinary intelligence have been
held not to be vague and indefinite. Floyd v. State, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978);
Anderson, 902 S.W.2d at 700. What we must do, then, is "to find the meaning of some not very
difficult words." Northern Sec. Co. v. United States, 193 U.S. 197, 401 (1904) (Holmes, J.,
dissenting).

 The courts have defined some of the terms which appellant challenges as vague. The
language "offensive gesture or display" is somewhat similar to the statute the Supreme Court upheld
in Chaplinsky, prohibiting an "offensive, derisive or annoying word." 315 U.S. at 569. In that case,
the Supreme Court cited with approval the test for offensiveness set forth by the New Hampshire
court: "what men of common intelligence would understand would be words likely to cause an
average addressee to fight." Id. at 573. Texas courts have defined and interpreted the term "breach
of the peace" to mean an act that "'disturbs or threatens to disturb the tranquility enjoyed by the
citizens.'" Woods v. State, 213 S.W.2d 685, 687 (Tex. Crim. App. 1948) (quoting Head v. State, 96
S.W.2d 981, 982 (Tex. Crim. App. 1936)).

 We next look to common definitions of "gesture," "incite," and "immediate." A
gesture is the "use of motions of the limbs or body as a means of intentional expression," Webster's
Third New International Dictionary 953 (1986) (hereinafter Webster's), or a "motion of the body
calculated to express a thought or emphasize a certain point," Black's Law Dictionary 696 (7th ed.
1999) (hereinafter Black's). To incite is to "move to a course of action; stir up; spur on," Webster's
1142, or to provoke, Black's 765. Immediate means "occurring, acting, or accomplished without
loss of time; made or done at once; instant," Webster's 1129, or "occurring without delay," Black's
751. The statute does not clearly show that the words "gesture," "incite," and "immediate" were
used in a sense different from their plain meaning; rather, these words are so well known that, in the
context of the statute, it would be difficult to attribute any other meaning to them. Given these
common, plain definitions, we cannot say that the statute fails to give a person of ordinary
intelligence a reasonable opportunity to know what is prohibited. Floyd, 575 S.W.2d at 23.

 Section 42.01(a)(2) is narrowly drawn to give a person of ordinary intelligence a fair
warning that the State prohibits the use of fighting words in a public place. The statute also provides
explicit standards for enforcement by only limiting the use of these words in public places when they
disturb or threaten to disturb the tranquility enjoyed by the citizens. Thus, the statute is not too
vague for a criminal law. Furthermore, because the statute applies only to fighting words, it is not
overbroad in proscribing conduct protected by the First Amendment. We overrule appellant's
second point of error.

 In his third point of error, appellant contends that section 42.01(a)(2) is
unconstitutional as applied to him because there was no evidence of any "immediate danger or
threat" from the people who witnessed his gesture. The State responds that appellant has waived this
point of error because he did not raise it below. We agree. A contention that a statute is
unconstitutional as applied to an accused must be asserted in the trial court or it is waived. See
Curry v. State, 910 S.W.2d 490, 496 n.2 (Tex. Crim. App. 1995); Garcia v. State, 887 S.W.2d 846,
861 (Tex. Crim. App. 1994); Bader v. State, 15 S.W.3d 599, 603 (Tex. App.--Austin 2000, pet.
ref'd). Here, there was no objection in the trial court to the constitutionality of section 42.01(a)(2)
"as applied" to appellant. Thus, appellant did not preserve this point of error for our review.


Sufficiency of the Evidence

 In his fourth point of error, appellant challenges the legal and factual sufficiency of
the evidence. The State responds that appellant failed to preserve error on these challenges. To the
contrary, an appellant may challenge both the legal and factual sufficiency of the evidence for the
first time on appeal. Rankin v. State, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001); Grayson v. State,
82 S.W.3d 357, 358-59 (Tex. App.--Austin 2001, no pet.) (citing Givens v. State, 26 S.W.3d 739,
741 (Tex. App.--Austin 2000, pet. ref'd)). Furthermore, appellant requested a motion for instructed
verdict at trial, which is a challenge to the legal sufficiency of the evidence. Grayson, 82 S.W.3d
at 358 (citing Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996)).

 When both the legal and factual sufficiency of the evidence are challenged, we must
first determine whether the evidence is legally sufficient to support the judgment. Clewis v. State,
922 S.W.2d 126, 133 (Tex. Crim. App. 1996). When reviewing legal sufficiency, we view the
evidence in the light most favorable to the judgment and determine whether a rational trier of fact
could have found the elements of the offense beyond a reasonable doubt. Curry v. State, 30 S.W.3d
394, 406 (Tex. Crim. App. 2000). We do not examine the fact finder's weighing of the evidence,
but merely determine whether there is evidence supporting the judgment. Clewis, 922 S.W.2d at 132
n.10.

 For a rational trier of fact to have found appellant guilty of the offense of disorderly
conduct by gesture, the State must have adduced proof to establish, beyond a reasonable doubt, that 


(a) appellant


(b) intentionally or knowingly


(c) made an offensive gesture


(d) in a public place


(e) that tends to incite an immediate breach of the peace.



See Tex. Pen. Code Ann. § 42.01(a)(2). Two of the elements were not at issue. The Pastranos and
appellant testified that the incident occurred on a highway, which is a public place--albeit here the
people involved were in their respective vehicles. Id. § 1.07(a)(40) (West 2003). Whether the
gesture is offensive was also not at issue. "The extended middle finger, or digitus impudicus, is an
ancient opprobrious gesture that often has obscene implications." Betty J. Bauml & Franz H.
Brauml, A Dictionary of Gestures 71 (1975). Both of the Pastranos testified that the gesture means
"f--- off" or "f--- you," which is generally considered to be offensive. (3) Appellant did not testify
about his understanding of the meaning of the gesture.

 Whether appellant made the gesture was in question. John Pastrano testified that
appellant "shot me the bird" with his right hand when passing Pastrano's vehicle. Robin Pastrano
testified similarly: "I looked, because I was curious to see who it was, and I saw him flipping us
off." Both positively identified appellant in the courtroom as the man who made the gesture. 
Appellant denied making the gesture, although he testified that he has "given the bird to people on
many occasions." Viewing the evidence in the light most favorable to the judgment, the evidence
was legally sufficient to establish that appellant made the gesture.

 Thus, we are left with the question of whether appellant's gesture tends to incite an
immediate breach of the peace. "Actual or threatened violence is an essential element of a breach
of the peace." Woods, 213 S.W.2d at 687. The test is whether the words, "when addressed to the
ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent
reaction." Cohen, 403 U.S. at 20; see also Virginia v. Black, 123 S. Ct. 1536, 1547 (2003).

 Whether particular words constitute fighting words is a question of fact. Duran, 921
S.W.2d at 785. This "require[s] careful consideration of the actual circumstances surrounding the
expression, asking whether the expression 'is directed to inciting or producing imminent lawless
action and is likely to incite or produce such action.'" Texas v. Johnson, 491 U.S. 397, 409 (1989)
(quoting Brandenburg v. Ohio, 395 U.S. 444, 447 (1969)). Language that is merely harsh and
insulting does not generally rise to the level of fighting words; derisive or annoying words only rise
to such level when they plainly tend to excite the addressee to a breach of the peace. Duran, 921
S.W.2d at 785. It is not enough that the words merely arouse anger or resentment. See Skelton v.
City of Birmingham, 342 So. 2d 933, 937 (Ala. Crim. App. 1976). Anything short of the use of
fighting words does not constitute a violation of the statute. Jimmerson, 561 S.W.2d at 7.

 Here, the record and circumstances of this case do not demonstrate that appellant's
gesture "tends to incite an immediate breach of the peace." Tex. Pen. Code Ann. § 42.01(a)(2). 
John Pastrano, one of two witnesses to the incident, testified as follows:


Q. What was your reaction when this happened, sir?


A. It made me angry. It kind of, you know, resulted back into, you know, as if I
wanted to react to it, as in an angry mode, you know, to somewhat defend, you
know, myself, as well as the disrespect of my wife.


Q. And what did you do as a result of that?


A. I went ahead and dialed 9-1-1 due to the fact-because the vehicle had went on
after that.



Although the gesture may have been provocative, there is no evidence that Pastrano was moved to
violence or restrained himself from retaliating. Instead, he had the composure to call 911 on his cell
phone and report not the gesture but reckless driving. Robin Pastrano similarly testified that she was
angry:


Q. How-what did you think of that gesture? How did that affect you?


A. I was angry and scared and upset all at one time.


Q. Okay. Do you find that-that gesture offensive to you, ma'am?


A. Yes, sir.


* * *


Q. How long did you stay upset about this?


A. A few days, it made me upset, maybe two or three days. Not that not [sic] long,
but it did make me very upset.



 There is no showing that Pastrano and his wife were in fact violently aroused or that
appellant intended such a result. See Cohen, 403 U.S. at 20. Taking serious offense does not
necessarily lead to disturbing the peace, and we may not prohibit conduct on that ground alone. See
Johnson, 491 U.S. at 408-09. "The fact that speech arouses some people to anger is simply not
enough to amount to fighting words in the constitutional sense." Cannon v. City & County of
Denver, 998 F.2d 867, 873 (10th Cir. 1993).

 The State attempts to equate Pastrano's reaction to that of the high school principal
in Estes, who testified that when a student directed the gesture at him at a graduation ceremony, he
reacted with "shock and anger, but . . . resisted 'an animal instinct to retaliate.'" 660 S.W.2d at 874. 
The circumstances in Estes differ. There, the setting was a formal ceremony in a public arena, which
carries with it an expectation of decorum and civility. The principal was in a position of authority
over the student, and they knew each other. Moreover, the student made the gesture "at a distance
of not more than a few inches from the principal's face," in disregard of the principal and the
ceremony. Id. Here, a motorist, one stranger to another, (4) made the gesture as he sped past the other
car. The incident was over in a matter of seconds, and the encounter was not in close proximity or
in the context of a public gathering.


 We agree that the gesture--repugnant, distasteful, and crass as it is--could tend to
incite an immediate breach of the peace in a different context. In some circumstances, it may
accompany or be attendant to "road rage" or reckless driving, which may be prosecuted under Texas
law. See Tex. Transp. Code Ann. § 545.401(a) (West 1999) (person drives recklessly if "drives a
vehicle in wilful or wanton disregard for the safety of persons or property"); see also Benge v. State,
94 S.W.3d 31, 35-36 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd) (citing Tex. Pen. Code Ann.
§ 22.02(a)(2) (West 2003)) (reckless driving can be lesser-included offense of aggravated assault
with motor vehicle). But given the circumstances--the brief exposure to the gesture as one car
passed the other, made stranger to stranger, causing momentary hostility on Pastrano's part--we
cannot conclude that appellant's conduct tends to incite an immediate breach of the peace. There
was no actual or threatened violence, "which is an essential element of a breach of the peace." 
Woods, 213 S.W.2d at 687. That the gesture may be thrust upon unsuspecting or sensitive viewers
falls short of the type of conduct in a public place that would incite those present to violence. See
Cohen, 403 U.S. at 21-22 (in the presence of many people at a courthouse, wearing jacket bearing
the term "F--- the draft" did not constitute fighting words).

 Furthermore, to incite an immediate breach of the peace contemplates a face-to-face
encounter, such as occurred in Estes, or at least something more than the impersonal, brief encounter
of one motorist passing another. For example, a motorist shouting an obscenity and making the same
gesture to a group of abortion protestors did not rise to the level of fighting words because the
vehicle was across the street from the group and traveling at a high rate of speed. Sandul v. Larion,
119 F.3d 1250, 1255 (6th Cir. 1997). When a passing motorist shouted "sooey" to a police officer,
he did not violate the statute because there was "no direct face-to-face contact or other exigent
circumstances." Garvey v. State, 537 S.W.2d 709, 711 (Tenn. Crim. App. 1976); see also Matter
of Welfare of S.L.J., 263 N.W.2d 412, 420 (Minn. 1978) (when young girl shouted obscenity to
police officer who was standing fifteen feet away "rather than eye-to-eye, there was no reasonable
likelihood that [the words] would tend to incite an immediate breach of the peace or to provoke
violent reaction by an ordinary, reasonable person"); Herschfield v. Commonwealth, 417 S.E.2d 876,
877-78 (Va. App. 1992) (when one neighbor shouted obscenity to another, "distance and barriers"
precluded an immediate breach of the peace).

 Viewing the evidence in the light most favorable to the jury's verdict, a jury rationally
could not have found beyond a reasonable doubt that appellant's gesture tends to incite an immediate
breach of the peace. In making this determination, we have adhered to a scrupulous reading of the
facts, a standard not met by the dissent's departure from and over-characterization of the record. (5) 
We therefore sustain appellant's fourth point of error that the evidence was legally insufficient to
support the judgment of conviction. In light of our disposition, we need not address appellant's
factual sufficiency challenge or his fifth point of error challenging probable cause to charge him with
a crime.


CONCLUSION


 We hold that the evidence was legally insufficient to establish that appellant's gesture
tends to incite an immediate breach of the peace. Because the evidence is legally insufficient to
support appellant's guilt, we reverse the judgment of conviction and render a judgment of acquittal. 
Burks v. United States, 437 U.S. 1, 16-18 (1978) (holding that double jeopardy bars retrial when
reviewing court finds evidence legally insufficient); Clewis, 922 S.W.2d at 133 (reviewing court
must render judgment of acquittal upon determination of legal insufficiency).



 

 Jan P. Patterson, Justice


Before Chief Justice Law, Justices Patterson and Dally*:

 Opinion by Justice Patterson; Dissenting Opinion by Chief Justice Law


Reversed and Rendered

Filed: October 9, 2003

Publish








* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The "bird" is "an obscene gesture of contempt made by pointing the middle finger upward
while keeping the other fingers down." Merriam-Webster OnLine, at http://www.m-w.com. This
gesture is of ancient origin:


[T]he middle-finger jerk was so popular among the Romans that they even gave
a special name to the middle digit, calling it the impudent finger: digitus
impudicus. It was also known as the obscene finger, or the infamous finger, and
there are a number of references to its use in the writings of classical authors. . . .
The middle-finger jerk has survived for over 2,000 years and is still current in
many parts of the world, especially the United States.


Desmond Morris et al., Gestures 81-82 (1979). This symbolic gesture has come to mean many
things to many people in many contexts, including "displeasure" and "mild annoyance." See Martha
Irvine, Is the Middle Finger Losing Its Badness?, AP Online, Feb. 23, 2003, available at 2003 WL
13367718 (reprinted in several newspapers). See also the cover of the September 20, 2003 issue of 





The Economist magazine, depicting a cactus in a desert panorama giving the gesture because of
displeasure with the outcome of the Cancún trade talks.
2. The gesture of extending one's middle finger can be construed as speech because it has a
well-known connotation. See Burnham v. Ianni, 119 F.3d 668, 674 (8th Cir. 1997) (citing Spence
v. Washington, 418 U.S. 405, 411 (1974)) ("Nonverbal conduct constitutes speech if it is intended
to convey a particularized message and the likelihood is great that the message will be understood
by those who view it, regardless of whether it is actually understood in a particular instance in such
a way.").
3. Nevertheless, the opprobrium of this gesture may be in decline. See Irvine, supra note 1
("These days, 'the bird' is flying everywhere--and, in many instances, losing its taboo status,
especially among the younger set.").
4. Both appellant and Pastrano testified that they had never seen the other before.
5. For example, nowhere in the record does it state that Coggin forced the Pastranos over. 
Pastrano testified that he "put on [his] signal light and moved to the outside lane" after Coggin
flashed his headlights.