**Affirmed and Opinion Filed August 21, 1997**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-95-00951-CR

---

### JESSIE DON LEWIS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the Criminal District Court No. 1
Dallas County, Texas
Trial Court Cause No. F95-73644-LH**

---

## O P I N I O N

Before Justices Kinkeade, Ovard, and Chapman
Opinion By Justice Ovard

The trial court convicted Jessie Don Lewis of aggravated robbery and assessed a

sentence of thirty years imprisonment. In three points of error, Lewis asserts the evidence

is legally and factually insufficient to support the trial court's judgment and he was denied

effective assistance of counsel. We affirm the trial court's judgment.

## BACKGROUND

Angela Jones, the complaining witness, reported that Lewis held a gun to her head and took her jewelry. The incident occurred at the Crest A Apartments, a location noted for drug-related crimes. Lewis denied robbing Jones. Instead, he speculated Jones falsely accused him of aggravated robbery in retaliation for his selling her fake crack cocaine.

## SUFFICIENCY OF EVIDENCE

In his first point of error, Lewis contends the evidence is legally insufficient to prove he committed aggravated robbery because the complaining witness's testimony was not credible or reliable. The State responds that Lewis's challenge is directed at credibility instead of sufficiency, and that credibility of a complainant is solely within the province of the factfinder.

In his second point of error, Lewis asserts the evidence is factually insufficient to support his conviction because credible and reliable testimony was presented that the complaining witness purchased fake crack cocaine from him. The State replies that, because credibility of witnesses is an issue for the factfinder to determine, the evidence is factually sufficient to support Lewis's conviction.

### 1. Standard of Review

In reviewing a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Green v. State,* 761 S.W.2d 824, 825 (Tex.

-2-

App.--Dallas 1988, no pet.). The factfinder resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic to ultimate facts. *Dumas v. State*, 812 S.W.2d 611, 615 (Tex. App.--Dallas 1991, pet. ref'd). The factfinder is the exclusive judge of the witnesses' credibility and the testimony's weight. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 865 (1985); *Dumas*, 812 S.W.2d at 615. The factfinder may accept or reject any or all evidence. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). That the appellant presents a different factual version does not render the evidence insufficient. *Anderson v. State*, 701 S.W.2d 868, 872-73 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 870 (1986).

When an appellant challenges the factual sufficiency of the evidence, we review all the evidence without the prism of "in the light most favorable to the prosecution." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In analyzing the factfinder's determination of a vital fact, we do not decide the existence or nonexistence of a vital fact nor do we decide the truth or falsity of proffered evidence nor do we judge the credibility of witnesses. *Scott v. State*, 934 S.W.2d 396, 399 (Tex. App.--Dallas 1996, no pet.). Our evaluation of the factual sufficiency of the evidence should not substantially intrude upon the factfinder's role as the sole judge of the weight and credibility of witness testimony. *See Santellan v. State*, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). As a reviewing court, we may not reweigh the evidence and set aside the factfinder's determination merely because we feel that a different result is more reasonable. *Clewis*, 922 S.W.2d at 135. If we

determine the factfinder's determination is against the great weight of the evidence presented at trial so that it is clearly wrong and unjust, we must reverse and remand for a new trial. *Id.* A verdict is "clearly wrong and unjust" if it shocks the conscience or clearly demonstrates bias. *Id.*; *Scott*, 934 S.W.2d at 399.

## 2. Applicable Law

A person commits robbery if, in the course of committing theft, with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 1994). Robbery becomes aggravated if a person, in the course of committing a robbery, uses or exhibits a deadly weapon during the robbery commission. TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 1994). A handgun is a deadly weapon per se. *Anderson v. State*, 813 S.W.2d 177, 179 (Tex. App.--Dallas 1991, no pet.).

In a challenge to the sufficiency of the evidence, positive identification of a defendant as the perpetrator of a crime is sufficient to support a conviction. *Everett v. State*, 707 S.W.2d 638, 639 (Tex. Crim. App. 1986); *Hester v. State*, 909 S.W.2d 174, 178 (Tex. App.--Dallas 1995, no pet.); *Jones v. State*, 687 S.W.2d 430, 432 (Tex. App.--Houston [14th Dist.] 1985, no pet.).

## 3. Testimony

### a. State Witnesses

The complaining witness, Angela Jones, testified that, on the day of the robbery, her sister Ella Campbell paged her. Campbell asked Jones to pick her up at the Crest A

Apartments, where she was visiting. When Jones arrived at the apartment complex, she parked her car and waited for her sister. When Campbell did not come to the car, Jones began to look for her.

A number of people were standing outside. Jones saw Lewis looking at her. He asked her for a cigarette. She told him she did not have one. Suddenly, Lewis pulled a small, black, .25 caliber automatic gun and stuck it in her face. He pulled back the clip, and Jones heard it click. Then he demanded: "Bitch, give me your jewelry." Jones hesitated. Lewis moved the gun to her temple and roughly pulled at a ring. Because she feared that Lewis would shoot her, Jones removed her rings.

Next, Lewis began looking at and pulling on her black leather coat. She told him he would have to fight her for her coat. Then, Lewis asked her if she had any money, and she replied no. He took her rings and turned around to show the bystanders what he had stolen. The bystanders reacted by laughing.

Meanwhile, Jones's sister arrived. Jones ran to a nearby telephone booth to call for help. Lewis fled. While Jones talked to the 911 operator, bystanders told her the gunman's name was "Red Devil". When the police arrived, Jones gave them Lewis's description. Lewis's sister came out of her apartment and also talked with Jones and with the police. Jones testified that Lewis' sister told her that, if Jones would return the next day, she would try to get her jewelry back.

On cross examination, Jones testified that she does not buy, sell, or use drugs. She denied frequenting the Crest A Apartments and stated that, except for the day she was

-5-

robbed, she had not been to that apartment complex in seven years. Jones denied ever having purchased drugs, or phoney drugs, from Lewis. She also denied that she was angry at Lewis for selling her "phoney dope."

Ella Campbell testified that she paged Jones for a ride. While waiting for her sister outside the Crest A Apartments, Campbell noticed two men in front of the complex "kind of fussing about something." She asked one of the men to notify her when her sister arrived, and she returned to an apartment upstairs. A short time later, the man found her and told her that her sister was being robbed.

When Campbell came down the stairs she observed Lewis, who she knew as "Red Devil", standing in front of Jones. Jones appeared to be terrified and almost in tears. Campbell asked what was wrong, and Jones said that Lewis had robbed her. Campbell yelled at Lewis and asked him "What you doing . . . with my sister?" He laughed and held a gun in the air. Lewis left when Jones phoned the police. Before the police arrived, the bystanders told Campbell that Lewis "robbed [Jones]."

Approximately two weeks later, Campbell was walking down the street when Lewis approached her in a car with his mother. Lewis got out of the car and told Campbell he and his mother wanted to talk to Jones about dropping the charges. His mother was wearing Jones's rings. Campbell refused to disclose her sister's address.

Charlie Law testified that, as a police officer with the Dallas Police Department, he had patrolled the area around the Crest A Apartments for approximately five years. The Crest A Apartments are located in a high crime area. On the day of the robbery, he was

driving through the Crest A complex when Jones flagged him down and told him a man had just taken her jewelry. He parked his car and walked into the complex. People were gathered outside near the laundry room. Law asked two bystanders what had happened, and they told him they had seen a robbery. Through his investigation, Law determined Lewis was the man who robbed Jones and that his street name is "Red Devil". Law also testified Jones lived in his patrol area and that he knew her because of her involvement in various disturbance calls he had worked over the years. He had never previously seen Jones at the Crest A apartments, and he had also never seen her buy, sell, or use narcotics.

### b. Defense Witnesses

Lewis testified that, although he sold Jones fake crack cocaine, he did not rob her. He stated he had a previous conviction for selling drugs and that he stays with his sister at the Crest A Apartments, where he smokes crack cocaine. He knew Campbell to be a "crack head" from previous occasions of smoking crack cocaine with her. He had never met Jones before. On the day of the robbery, Jones and Campbell approached him at the Crest A Apartments. Campbell asked him, "Red Devil, would you show me where some good dope is?" Lewis gave the sisters ten rocks of fake crack cocaine, and Jones paid him one hundred dollars. The sisters left the complex.

Jones returned approximately five minutes later. From the window of a friend's nearby house, Lewis observed Jones talking with police. He was afraid to come out and talk to the officers because he believed they would arrest him for selling fake crack cocaine. Lewis stated Jones falsely accused him of robbing her because he had "scammed" her by

selling her fake cocaine. He denied carrying a gun, which would be a violation of a condition of his parole.

Linda Brown, Lewis' cousin, testified she was visiting the Crest A Apartments on the day of the robbery. She was aware that drugs were frequently bought, sold, and used there. Brown observed Lewis, Jones and several other people standing outside the washateria. Lewis and Jones were talking; Jones did not appear to be frightened. Lewis was not holding a gun. Brown saw Lewis hold out his closed fist and put something in Jones's hand in a manner commonly used for passing rock cocaine. She did not see Jones give him anything in return. Brown also testified that she had seen Lewis and Jones together before.

### 3. Application of Law to Facts

In reviewing a challenge to the legal sufficiency of evidence, we view the evidence in the light most favorable to the prosecution. Here, Jones positively identified Lewis as the man who placed a handgun to her head and demanded her jewelry. She was afraid Lewis would physically hurt or kill her if she did not comply. Lewis then took her five rings. Viewing this evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Lewis used a deadly weapon to place Jones in fear of imminent bodily injury or death if she did not give him her jewelry. The evidence is legally sufficient to sustain Lewis's conviction.

We overrule Lewis's first point of error.

In reviewing Lewis's challenge to the factual sufficiency of evidence, we will set aside the fact finding only if it is so contrary to the overwhelming evidence as to be clearly wrong

and unjust. Lewis testified that Jones falsely accused him of aggravated robbery in retaliation for his selling her fake crack cocaine. For corroboration of this evidence, he points to Brown's testimony that she observed Lewis and Jones engaged in a drug transaction. Both Lewis and Brown testified he did not have a gun.

The testimony of Jones, Campbell, and Law contradicts the testimony of Lewis and Brown. Jones testified she does not use drugs and that she has never bought drugs from Lewis. She testified Lewis placed a gun to her head and forced her to give him five rings. Campbell testified she found Jones as the robbery was ending. Jones appeared terrified. When Campbell yelled at Lewis for robbing her sister, Lewis held a gun in the air. Officer Law testified that he had never seen Jones buying, selling, or using narcotics.

Lewis's argument attacks Jones's credibility by placing at issue her purported use of drugs. Although we are authorized to disagree with the factfinder's finding of a vital fact, we are not authorized to judge the credibility of witnesses. *Scott*, 934 S.W.2d at 399. The trial court, as factfinder, was free to find Jones's testimony that she did not use drugs more credible than Lewis's testimony that Jones was a vindictive "crack head" who purchased fake crack cocaine from him. We have reviewed all the evidence. Based on its great weight and preponderance, we cannot conclude that the factfinder's determination that Lewis robbed Jones is clearly wrong and unjust. The trial court's judgment does not shock the conscience or demonstrate bias.

We overrule Lewis' second point of error that the evidence was factually insufficient to support his conviction.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his third point of error, Lewis asserts he received ineffective assistance of counsel when his trial attorney failed to object to hearsay testimony used by the State to prove he robbed Jones. The State responds the complained-of testimony was properly admissible under either the excited utterance or present sense impression exceptions to the hearsay rule. The State also responds the record as a whole shows Lewis was afforded reasonably effective assistance of counsel.

### 1. Standard of Review

We examine ineffective assistance of counsel by the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by the Texas Court of Criminal Appeals in *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986). To prevail on an ineffective assistance of counsel claim, appellant must first establish that his counsel's representation fell below an objective standard of reasonableness. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hernandez*, 726 S.W.2d at 55. Appellant must then show a reasonable probability exists that a different outcome would have resulted but for his trial counsel's professional errors. *Jackson*, 877 S.W.2d at 771; *Hernandez*, 726 S.W.2d at 55. Appellant must prove ineffective assistance of counsel by a preponderance of the evidence. *Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985). The record must support a claim of ineffective assistance. *See Johnson v. State*, 691 S.W.2d 619, 627 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 865 (1985).

-10-

We do not judge counsel's trial decisions in hindsight. *See Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim. App.), *cert. denied*, 506 U.S. 885 (1992). We strongly presume counsel's competence. *Id.*; *Jackson*, 877 S.W.2d at 771. Appellant can rebut this presumption by showing his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. *Jackson*, 877 S.W.2d at 771; *see Miniel*, 831 S.W.2d at 323.

We do not inquire into trial strategy unless no possible basis exists in strategy or tactics for trial counsel's actions. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. [Panel Op.] 1981). An appellant must establish that his trial counsel's acts or omissions were outside the range of professional competence. *Jackson*, 877 S.W.2d at 771; *Ross v. State*, 802 S.W.2d 308, 312 (Tex. App.--Dallas 1990, no pet.). That another attorney, including appellant's appellate counsel, might have pursued a different course of action does not necessarily indicate ineffective assistance. *See Hawkins v. State*, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983).

The fundamental focus of an effective assistance inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Strickland*, 466 S.W.2d 668. Failure of either of the two prongs of the *Strickland* analysis results in failure of the claim of ineffective assistance of counsel. *See id.*

### 2. Applicable Law

Evidence is hearsay if it is an out-of-court statement offered to prove the truth of the matter asserted. TEX. R. CRIM. EVID. 801(d). Hearsay is not admissible unless it meets an

-11-

exception to the hearsay rule. TEX. R. CRIM. EVID. 802; *see* TEX. R. CRIM. EVID. 803 & 804. However, most evidentiary and procedural rules are optional with each defendant. *Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993). A trial court need only exclude hearsay on a party's request. *Id.* A party must make a timely and specific objection to hearsay to preserve a complaint for appellate review. TEX. R. APP. P. 52(a); *Butler v. State*, 872 S.W.2d 227, 237 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1157 (1995); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Inadmissible hearsay admitted without objection is not denied probative value merely because it is hearsay. TEX. R. CRIM. EVID. 802.

Under the present sense impression exception to the hearsay rule, a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, is not excluded as hearsay. TEX. R. CRIM EVID. 803(1); *Rabbani v. State*, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993). The contemporaneous nature of the statement makes it reliable because there is little time for the declarant to calculate misstatements or suffer memory defects. *Chambers v. State*, 905 S.W.2d 328, 330 (Tex. App.--Fort Worth 1995, no pet.) (*citing Rabbani*, 847 S.W.2d at 560 and *Kubin v. State*, 868 S.W.2d 394, 396-97 (Tex. App.--Houston [1st Dist.] 1993, pet. ref'd)). When a declarant has had time to reflect upon the event and the facts learned after the event, the reliability of his statement is diminished. *Chambers*, 905 S.W.2d at 330.

Failure to object to admissible evidence does not constitute ineffective assistance of counsel. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 963 (1993). Failure to object to cumulative evidence is harmless and also will not support a claim of ineffective assistance of counsel. *Darby v. State*, 922 S.W.2d 614, 624 (Tex. App.--Fort Worth 1996, pet. ref'd); *Marlow v. State*, 886 S.W.2d 314, 318 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd).

### 4. Application of Law to Facts

At trial, the parties did not dispute that Lewis and Jones encountered one another outside the laundry room of the Crest A Apartments. They disagree, however, about the type of "event" that occurred. The State attempted to prove that Lewis used a gun to deprive Jones of her jewelry. Lewis attempted to establish that, instead of a robbery, a drug transaction occurred. His trial attorney advanced the hypothesis that Jones falsely accused Lewis of aggravated robbery in retaliation for Lewis selling her "bad dope." Although both parties agree, and the record indicates, that Brown and several bystanders observed the encounter between Lewis and Jones, Jones and Lewis were the only two witnesses who testified about what they said to each other.

Because their testimony was contradictory, Jones's credibility was the major issue for the factfinder to resolve at trial. Evidence that tended to make her story more probable than not would assist the factfinder in weighing the evidence and drawing reasonable inferences from basic to ultimate facts.

On appeal, Lewis contends his attorney was negligent in allowing the State to introduce into evidence hearsay testimony that corroborated Jones's version of the event. Specifically, he argues his attorney should have objected the following testimony:

Testimony of Angela Jones:

State:      Was the defendant anywhere in sight when the police showed up?

Jones:      No.  His -- well, some people ran and got his sister after he robbed me.  *And his sister came out there and talked to me and asked me if I come back the next day she'll try to get my jewelry back.*[1]

Testimony of Ella Campbell:

State:      While you were waiting for her to come pick you up, what happened?

Campbell:  There were two dudes right there in front, kind of fussing about something.  So I went back upstairs.  So I told this dude to tell me when my sister drive up.  So he come and told me my sister drove up.  But *he told me that the dude that pulled the gun on my sister, he was robbing her.*

State:      But at this point, you didn't know who this dude was--

Campbell:  No.  I didn't know right then until I got there.

Testimony of Ella Campbell:

State:      There were still people standing around there?

---

[1]Unless otherwise noted, the italicized portions of the quoted testimony represent the author's added emphasis.

Campbell: Yeah. Even though people said that he -- said go call the police. Everybody else started telling me after he disappeared.

State: What did they start saying?

Campbell: *Said that he robbed your sister and robbing ever body else.* I said I know it. I said because he messed with the wrong person when he robbed my sister. He can rob anybody else, but not my sister.

State: Were they using the name Jessie Lewis?

Campbell: No. They said "Red Devil."

Testimony of Charlie Law:

State: Did any of these people come up and talk to you about what they saw or what happened?

Law: Yeah, two people did. And the rest, they just continued to watch. And I approached them and I asked them what had happened. And they had seen it also.

State: *They saw the actual robbery?*

Law: *Yes.*

State: Were you able to apprehend the man who did the robbery?

Law: No, we didn't.

State: Through your investigation, Officer Law, and in that area, were you able to determine who this person was?

Law: Yes, I did.

-15-

State: And that was a man that you came to know as Jessie Don Lewis?

Law: Yes.

All four statements are assertions of an out-of court declarant that the "event" occurring between Lewis and Jones was a robbery. The State does not contest that they are hearsay. Lewis argues the harm in not objecting to the statements is demonstrated by the following excerpt from the State's argument:

State: You've got Ella Campbell's testimony about the way her sister looked afterward. She knows this man. She knows what he's capable of. You've got the testimony of the complaining witness in this case. But also you have unobjected to testimony from the officer from people who stood there in the crowd who came forward and told the officer they saw the robbery.

Defense: Your Honor, I am going to object. *I should have objected to hearsay at that time.* It's not in the police report. *There are not eyewitnesses other than the sister.*

State: Judge, *that officer related to you that testimony.* And that is not hearsay. *That's deemed full probative value.*

Court: Overruled. Go ahead.

State: *When those people came forward, they were as close in time as the complaining witness was. And they corroboroated [sic] that the robbery did, in fact, go down there at the apartment complex.*

To prevail on a claim of ineffective assistance of counsel, Lewis must first establish that his counsel's failure to object to the complained-of hearsay statements resulted in representation below an objective standard of reasonableness. *See Jackson*, 877 S.W.2d at

768. Because Lewis's attorney conceded during argument that he should have objected to at least one of the four objectionable hearsay statements and because the State does not argue on appeal that the attorney's failure to object was reasonable under prevailing professional norms, we will assume, without deciding, that counsel's failure to object resulted in representation below an objective standard of reasonableness. However, Lewis must still show that a reasonable probability exists that a different outcome would have resulted if the hearsay statements had been excluded. *See id.* at 771.

Failure to object to admissible evidence does not constitute ineffective assistance of counsel. *McFarland*, 845 S.W.2d at 846. The four hearsay statements all assert the same thing: a robbery occurred. If even one of these hearsay statements was properly admitted, evidence corroborating Jones's testimony would have been before the factfinder. Therefore, Lewis would not have been prejudiced by counsel's failure to object to the damaging testimony to any substantial degree because the unobjected-to hearsay statements would have been cumulative corroboration. *See Darby*, 922 S.W.2d at 624; *Marlow*, 886 S.W.2d at 318.

We determine the following testimony of Ella Campbell qualifies as a present sense impression exception to the hearsay rule: "So I told this dude to tell me when my sister drive up. So he come and told me my sister drove up. But he told me that the dude that pulled the gun on my sister, he was robbing her." *See Rabbani*, 847 S.W.2d at 560-61. This is a contemporaneous description of an event made while the declarant was perceiving the event, or immediately thereafter. Indeed, it is a description of a robbery *in progress*.

-17-

Lewis's counsel was not ineffective in failing to object to hearsay which was properly admissible under the present sense impression exception to the hearsay rule.

Because evidence corroborating Jones's testimony that Lewis robbed her was properly before the factfinder, Lewis has not shown that a reasonable probability exists that a different outcome would have resulted if his trial attorney had objected to the complained-of hearsay statements. We overrule his third point of error.

We affirm the trial court's judgment.


JOHN OVARD
JUSTICE


Do Not Publish
TEX. R. APP. P. 90
950951F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JESSIE DON LEWIS, Appellant

No. 05-95-00951-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 1 of Dallas County, Texas. (Tr.Ct.No. F95-73644-LH).
Opinion delivered by Justice Ovard, Justices Kinkeade and Chapman participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered August 21, 1997.

JOHN OVARD
JUSTICE