**WAL–MART STORES, INC., Appellant,**

v.

**Karl W. COCKRELL, Appellee.**

**No. 13–00–145–CV.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 29, 2001.

---

2. The prosecutor asked this question as the last question of the last witness on the last day of the lengthy jury trial.

Kevin D. Jewell, Magenheim, Bateman & Helfand, Stephen J. Knight, Attorney at Law, Houston, for Appellant.

Anthony Ray Segura, Attorney at Law, Scott M. Broussard, Houston, for Appellee.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

## OPINION

DORSEY, Justice.

Wal–Mart Stores, Inc., appeals from a judgment, following a jury verdict, finding that it had assaulted and falsely imprisoned a suspected shoplifter, Karl Cockrell. Based upon these findings the jury awarded Cockrell $300,000 for past mental anguish. The question raised on appeal is whether the evidence is legally and factually sufficient to support the verdict. We affirm.

## I.  FACTS

On November 6, 1996, Karl Cockrell and his parents went to the layaway department at a Wal–Mart store. Cockrell stayed for about five minutes and decided to leave. As he was going out the front door Raymond Navarro, a loss-prevention officer, stopped him and requested that Cockrell follow him to the manager's office. Once in the office Navarro told him to pull his pants down. Cockrell put his hands between his shorts and underwear, pulled them out, and shook them. Nothing fell out. Next Navarro told him to take off his shirt. Cockrell raised his shirt, revealing a large bandage which covered a surgical wound on the right side of his abdomen. Cockrell had recently had a liver transplant. Navarro asked him to take off the bandage, despite Cockrell's explanation that the bandage maintained a sterile environment around his surgical wound. On Navarro's insistence Cockrell took down the bandage, revealing the wound. Jay Garrison and Nancy Suchomel, both Wal–Mart employees, were in the office when Cockrell lifted his shirt. Afterwards Navarro apologized and let Cockrell go.

## II.  DISCUSSION

By issues one and two Wal–Mart attacks the legal and factual sufficiency of the evidence to support the jury's findings that it had assaulted and falsely imprisoned Cockrell. In considering a "no evidence," "insufficient evidence," or an "against the

great weight and preponderance" point of error we follow the well-established tests set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 TEXAS L. REV. 361 (1960).

## A. FALSE IMPRISONMENT

■ The elements of false imprisonment are: (1) a willful detention; (2) performed without consent; and (3) without the authority of law. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). A person may falsely imprison another by acts alone or by words alone, or by both, operating on the person's will. *J.C. Penney Co. v. Duran*, 479 S.W.2d 374, 380 n. 9 (Tex.Civ.App.-San Antonio 1972, writ ref'd n.r.e.).

■ In a false-imprisonment case if the alleged detention was performed with the authority of law then no false imprisonment occurred. *Wal–Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998). The plaintiff must prove the absence of authority in order to establish the third element of a false-imprisonment cause of action. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex.1985) (per curiam).

A case which helps to decide this issue is *H.E. Butt Grocery Co. v. Saldivar*, 752 S.W.2d 701 (Tex.App.-Corpus Christi 1988, no writ). In that case Saldivar was shopping at an H.E.B. store when a clerk told Isabel Lopez, an assistant manager, that "a lady" had taken a pair of sunglasses and removed the sales tag. Lopez did not see Saldivar take the sunglasses. As Saldivar walked outside the store, an armed security guard stopped her, accused her of theft, and told her to come to a back room with him. At that point Lopez approached her and displayed a sales tag she had found which she claimed Saldivar had removed from the sunglasses. The security guard guided Saldivar back into the front of the store where she remained for several minutes. She was released after the manager determined that she had not stolen the sunglasses.

Saldivar sued H.E.B. for false imprisonment. At trial, she testified that after she and the security guard entered the store she did not leave because she "didn't feel like [she] could." She stated that she never went near the sunglass display. A jury returned a verdict in her favor. We affirmed, finding that the facts supported a willful detention without consent and that a rational jury could have found that H.E.B. did not "reasonably believe" a theft had occurred and therefore lacked authority to detain her. *Id.* at 702–04.

### Analysis

#### 1. Willful Detention and Consent

■ Here Ray Navarro, the loss-prevention officer, testified that Cockrell was in his custody at the point when he escorted him to the office. When Cockrell's counsel asked Navarro, "Was it your decision as to when he [Cockrell] could leave?" he replied, "I guess." Navarro testified that he probably would have let Cockrell leave after seeing that he did not have anything under his shirt.

Cockrell testified that he was not free to leave when Navarro stopped him and that Navarro was not going to let him go. He also testified that Navarro and two other Wal–Mart employees accompanied him to the office. When counsel asked Cockrell why he did not leave the office, he replied, "Because the impression I was getting from him, I wasn't going no place."

We conclude that these facts are sufficient to support the jury's finding that Cockrell was willfully detained without his consent. *See Saldivar*, 752 S.W.2d at 702–03; *see also Wal–Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 521 (Tex.App.-San Antonio 1996, writ denied) (customer's testimony that employee grabbed her as she walked out of store and subjected to a search supported jury's finding of willful detention).

## 2. Authority of Law.

Question One asked the jury whether Wal–Mart falsely imprisoned Karl Cockrell. "Falsely imprison" was defined to mean "willfully detaining another without legal justification...." The court instructed the jury on the "shopkeeper's privilege." This instruction stated: "when a person reasonably believes that another has stolen or is attempting to steal property, that person has legal justification to detain the other in a reasonable manner and for a reasonable time to investigate ownership of the property." Thus the jury could only find false imprisonment if it found no justification for Wal–Mart's actions.

## A. Reasonable Belief

Neither Raymond Navarro nor any other store employee saw Cockrell steal merchandise. However Navarro claimed he had two reasons to suspect Cockrell of shoplifting. First he said that Cockrell was acting suspiciously, because he saw him in the women's department standing very close to a rack of clothes and looking around. Later he saw Cockrell looking around and walking slowly by the cigarette aisle and then "pass out of the store." Second he saw a little "bulge" under Cockrell's shirt.

Cockrell testified that he had done "nothing" and that there was "no way" a person could see anything under his shirt. We conclude that a rational jury could have found that Navarro did not "reasonably believe" a theft had occurred and therefore lacked authority to detain Cockrell. *See Saldivar*, 752 S.W.2d at 704.

## B. Reasonable Manner

■ The extent to which Wal–Mart searched Cockrell compels us to address the reasonable manner of the detention. The "shopkeeper's privilege" expressly grants an employee the authority of law to detain a customer to investigate the ownership of property in a *reasonable manner*. TEX. CIV. PRAC. & REM. CODE ANN. § 124.001 (Vernon 1997 & Supp.2001) (emphasis added).

At least one appellate court has stated that when a store employee has probable cause to arrest a person for shoplifting, the employee may do so and make a "contemporaneous search" of the person and the objects within that person's control. *See Raiford v. The May Dep't Stores Co.*, 2 S.W.3d 527, 531 (Tex.App.-Houston [14th Dist.] 1999, no pet.). As authority for this precept the *Raiford* Court relied in part on *Douglas v. State*, 695 S.W.2d 817 (Tex. App.-Waco 1985, pet. ref'd). In that case a private citizen, Melvin Jodie, discovered that someone had burglarized his home and stolen his property. A police officer told Jodie that he thought he knew who had committed the crime and that the suspect lived in a house on a certain street. Jodie went to the house, found Douglas with the stolen property, and delivered him into the officer's custody. Douglas was convicted of burglary and on appeal asserted that Jodie's citizen's arrest was illegal. The appellate court stated that article 18.16 of the Texas Code of Criminal Procedure authorized a private citizen to make a warrantless arrest of a thief when the stolen property is found in the thief's

possession. *Id.* at 820. The court further stated that because Douglas's warrantless arrest was lawful, Jodie was authorized to conduct a contemporaneous search of his person and of the area within Douglas's immediate control. *Id.*

■ We therefore hold that when a store employee has probable cause to arrest a person for shoplifting, the employee may do so and make a contemporaneous search of the person and objects within that person's immediate control. *See Raiford,* 2 S.W.3d at 531; *Douglas,* 695 S.W.2d at 820. The contemporaneous search is limited to instances in which a search of the body is reasonably necessary to investigate ownership of property believed stolen. Accordingly Navarro's contemporaneous search was unreasonable in scope, because he had no probable cause to believe that Cockrell had hidden any merchandise under the bandage. Removal of the bandage compromised the sterile environment surrounding the wound. Having found the evidence sufficient with respect to each of the essential elements of false imprisonment we overrule issue one.

## B. ASSAULT

■ Question Two asked whether Wal–Mart assaulted Cockrell. The jury answered affirmatively. The trial court instructed the jury that a person commits an assault "if he intentionally or knowingly causes physical contact with another, when he knows or should reasonably believe that the other will regard the contact as offensive or provocative."[1] Cockrell's testimony was that as he was going out the outer set of front doors Navarro put his hands on his back and shoulder and "twisted" him around. He thought that Navarro was going to rob him. Navarro did not believe that he had touched Cockrell. We conclude that a rational jury could find that Navarro knew or should have reasonably believed that Cockrell would regard the contact as offensive or provocative. We hold that the evidence is legally and factually sufficient to support the jury's finding that Wal–Mart assaulted Cockrell. We overrule issue two.

## C. Mental Anguish.

By issue three Wal–Mart asserts that there is no evidence to support the $300,000 award for past mental anguish. Alternatively Wal–Mart argues that the award is against the great weight and preponderance of the evidence. We conclude that there is evidence to support the award.

■ In *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995) the court held that a mental anguish damages award requires evidence of a "high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger." *See Stevens v. National Educ. Ctrs., Inc.,* 11 S.W.3d 185, 185 (Tex.2000). To recover for mental anguish a plaintiff must offer "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," or other evidence of " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996) (quoting *Parkway,* 901 S.W.2d at 444). Courts should "closely scrutinize" awards of mental anguish damages. *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 54 (Tex.1997). There must also be evidence that the amount of mental anguish damages awarded is fair and reasonable, and the appellate

---

1. The trial court did not instruct the jury on any defensive theories.

court must perform a "meaningful evidentiary review" of the amount found. *Saenz*, 925 S.W.2d at 614.

In *Teledyne Exploration Co. v. Klotz*, 694 S.W.2d 109 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.) Teledyne entered upon Klotz's property and began bulldozing a sendero to facilitate running a seismic survey line. Klotz alleged that the bulldozing of his trees caused him mental anguish. We stated that the testimony that Klotz "was disorientated, shocked, felt violated and was choked up, is some evidence of mental anguish...." *Id.* at 112.

▆ Evidence of Cockrell's mental anguish comes largely from the following testimony: Counsel asked Cockrell to describe his demeanor when he took down his bandage in the manager's office. He stated that Navarro:

> made me feel like I was scum, like ... I was no part of society, that I had no say-so in the matter, that-just made me feel like a little kid on the block, like the bully beating the kid up and saying, "Well, I didn't catch you with nothing; but I'm going to humiliate him, twist a knife a little bit more into them."

When counsel asked Cockrell how he felt when people looked at the scar he said, "Humiliated.... Your dignity has been stripped, been raped. All your rights have been-might as well have been taken away at that time because I had no rights back there.... [E]ven after it was over with, I felt like I had no rights."

Cockrell testified that after Navarro let him go he was shaking, crying, nervous, scared, and looking around to make sure no one else was trying to stop him. When he got home his demeanor was about the same.

Cockrell's parents saw him in the Wal-Mart store immediately after he was let go. They said he was upset, nervous, had tears in his eyes, and looked scared, pale, and badly shaken up. When he arrived at home he was crying, nervous, and still "pretty well shook up." His mother said that he stayed upset for a "long time" and would not go out of the house or go anywhere with his parents. She explained that

> he won't go out hardly. And if he does, he just goes with us. And he's always looking around if we go in a store, like he's looking over his shoulder to see if anybody's following him. And he's self-conscious of his stomach, and he feels like everybody knows it....

His father said that:

> Before this happened, he [Cockrell] and I, we were real good buddies. We went places together, you know, and we'd go to the Dairy Queen and we'd go down to the pawn shop and just shop around, you know. And after that, he was-he really didn't want to go nowhere. And I asked him one time, "Why?" He said, "I just don't want to go." And a lot of times-sometimes he might go and sometimes he might sit in the car and I go do what I want to do. But after that, he-he has just recently got out of it, really.... [W]e're a member of the lodge and he didn't even want to go to the lodge with me because he was so embarrassed that he might meet someone down there that would confront him with what had happened out there. And he just-recently, we'll go places together now since I retired and he's not been working for a long time. And just got buddy-buddy again, and he's finally come out of it some. But he's still not like he was.

On cross-examination his father said that in 1997 he and Cockrell began going to the Dairy Queen sometimes once or twice a day to socialize.

This is direct evidence of the nature, duration, and severity of Cockrell's mental

anguish, thus establishing a substantial disruption in his daily routine. His mental pain and distress was more than mere worry, anxiety, vexation, embarrassment, or anger. *See Latham v. Castillo,* 972 S.W.2d 66, 70 (Tex.1998) (plaintiffs' testimony that conduct "made me throw up . . . sick, nervous, mad," "hurt me a lot," and "my heart was broken. I was devastated, I felt physically ill" held some evidence that conduct caused a "high degree of mental pain and distress."); *Goodman v. Page,* 984 S.W.2d 299, 306–07 (Tex.App.-Fort Worth 1998, pet. denied) (holding that testimony regarding stomach problems, harm to reputation, public and private humiliation, being devastated, feeling betrayed, and subjection to derogatory comments constituted high degree of mental pain and distress); *America West Airlines, Inc. v. Tope,* 935 S.W.2d 908, 917 (Tex.App.-El Paso 1996, no writ) (holding testimony that plaintiff was scared to death, devastated, frustrated, very angry and in therapy almost every day was sufficient to support damages for mental anguish); *Teledyne Exploration Co. v. Klotz,* 694 S.W.2d 109, 112 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.).

We hold that the evidence is legally and factually sufficient to support the award of mental anguish damages. We overrule issue three.

During oral argument Wal–Mart waived its complaint under issue four, which concerned the calculation of prejudgment interest.

We AFFIRM the trial court's judgment.