02-10-034-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00034-CR

 

 


 
 
 Chad Raymond Dowell
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE County
Court at Law OF Hood COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          Appellant
Chad Raymond Dowell appeals his conviction for driving while intoxicated (DWI),
contending in two issues that the trial court abused its discretion by denying
his motions to suppress because (1) his arrest resulted from his false
imprisonment by citizens at a fast food drive-thru, and (2) he submitted to
breath testing only because he was promised his car would not be impounded if
he did.  We affirm.

Factual and Procedural Background

          Around
three o’clock one morning, Susan Lowe and Vickie Sansom were at a Whataburger
drive-thru in Susan’s small Ford pickup when Appellant’s Lincoln Town Car struck
them from behind.  Vickie turned around and Susan looked in the rearview mirror
to see if Appellant would come out to exchange insurance information, but he remained
in his car.

          Vickie
thought he looked drunk.  She noticed that he had trouble lighting a cigarette;
his head bobbed up and down as he vainly tried to join tip and flame.  She saw
him drop the cigarette and try to pick it up.  Susan saw him grope toward the
floorboard.  Vickie called 911.

          Appellant
did not retreat from Susan’s bumper after colliding with it; instead, he pushed
forward.  Susan held her foot down on the brake pedal to keep her truck at the drive-thru
window.  Although Vickie told the 911 operator that they would try to stall
Appellant as long as they could, and although their order was not yet ready, Susan
pulled around to the parking lot to wait for it there.  They watched as the
Lincoln paused at the drive-thru window.  When it emerged, Susan took down the
license plate number.

          Responding
to the 911 call, patrol cars converged at the Whataburger.  Granbury Police Officer
Brandi Dees drove into the front of the parking lot as Appellant rolled out the
back.  As other officers arrived, Susan and Vickie pointed them in that
direction.  Officer Dees followed Appellant to the highway and pulled him over
after he failed to signal a left turn at the intersection.

          Appellant’s
eyes were red and glassy, and he smelled heavily of cologne.  He fumbled in his
glove box for proof of insurance when Officer Dees asked him for it.  Unable to
produce it, and unable to provide a straight answer about whose car he was in, Appellant
offered that it was “a complicated matter.”  Officer Dees asked him if he had
been in an accident at the Whataburger.  He said no.  She had Appellant step out
of the car.

          When
Appellant exited the car, Officer Dees detected the odor of an alcoholic
beverage beneath that of cologne and Whataburger.  Appellant displayed six out
of six clues on the horizontal gaze nystagmus test (HGN), failed the walk and
turn and the one-leg stand tests, and had a $55 bar receipt stuffed in his
pocket.  Officer Dees arrested him for DWI and took him to jail.

          At
the jail, after receiving the statutory DWI warning, Appellant consented to
provide a breath sample.  While filling out the paperwork, however, Officer
Dees mistakenly had Appellant sign on a line indicating that he had refused. 
She did not, however, check the box indicating a breath-test refusal.

          Appellant’s
car had been towed after his arrest.  Appellant asked Officer Dees whether he
would get it back after he passed the breath test.  She replied that if he blew
below the legal limit, they “would go from there.”  Appellant provided two
breath specimens.  The first came back with an alcohol concentration of 0.156;
the second, 0.164.

          The
county attorney charged Appellant with DWI.  Appellant filed a document
entitled, “Notice of Intent to Object to Illegal Search and Memorandum and
Cases on Said Motion,” and seeking to “suppress the alleged controlled
substance, statements, and other items seized at the time of his detention and
arrest.”  Just before trial, Appellant’s attorney explained to the trial court
that he intended the document to serve as both a motion in limine and a motion
to suppress.  He argued that Appellant submitted to the breath test
involuntarily and that his arrest was based on illegal conduct.  The trial
court denied the motion to the extent it sought suppression of the breath test
results and carried the issue of the propriety of the arrest with the evidence
presented at trial.  After the State rested, the trial court denied the
suppression motions in toto.

          The
jury returned a verdict of guilty.  The trial court sentenced Appellant to six
months in jail probated for twelve months, a $1,200 fine, and restitution to
Susan Lowe for the damage to her pickup truck.

          Appellant
contends in two issues on appeal that the trial court abused its discretion by
denying his motions to suppress.

Standard
of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility
of the witnesses and the weight to be given their testimony.  Wiede v. State,
214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000), modified on other grounds by State v.
Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost
total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim.
App. 2006); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App.
2002).  But when application-of-law-to-fact questions do not turn on the
credibility and demeanor of the witnesses, we review the trial court’s rulings
on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652–53.

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).

Detention

          In
his first issue, Appellant does not specify precisely what evidence the trial
court should have suppressed; rather, he seems to complain generally of all
evidence obtained after his trip to Whataburger, where he claims he was falsely
imprisoned at the drive-thru.

          Nor
does Appellant assert that Susan Lowe and Vickie Sansom violated any statute or
constitutional provision in the drive-thru; instead, he relies on Wal-Mart
Stores, Inc. v. Cockrell, 61 S.W.3d 774 (Tex. App.—Corpus Christi 2001),
a civil case, to argue that they falsely imprisoned him there and thus rendered
illegal his subsequent arrest.  In so doing, however, he fails to tie his allegation
to the exclusionary rule set out in code of criminal procedure article 38.23,
which excludes evidence obtained in violation of a statute or constitutional
provision, but which is not invoked by a common law tort.  See Miles v.
State, 241 S.W.3d 28, 37 n.34 (Tex. Crim. App. 2007) (citing Crowell v.
State, 147 Tex. Crim. 299, 180 S.W.2d 343, 347 (1944)); Carroll v. State,
911 S.W.2d 210, 221 (Tex. App.—Austin 1995, no pet.); Delosreyes v. State,
853 S.W.2d 684, 689 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d); see
also Rocha v. State, 16 S.W.3d 1, 14 (Tex. Crim. App. 2000) (discussing
commentators’ views that “laws of the State of Texas,” as that is used in
article 38.23, is limited to statutes).

          Moreover,
even if a civil cause of action could implicate article 38.23, or if Appellant
had relied on the penal code offense of unlawful restraint instead of common-law
false imprisonment, both require proof of restraint, and the record here does
not show that Appellant was ever restrained.[2]  To the contrary, the
record shows that no one was behind Appellant when he entered the drive-thru and
that the sole vehicle in front of him, Susan’s truck, got out of his way.  The
evidence shows that Appellant rolled into a fast food drive-thru, collided with
Susan’s truck, and then bullied ahead, forcing her and Vickie to wait for their
order in the parking lot while he continued on his way.[3]  See State v. Garcia-Cantu,
253 S.W.3d 236, 246, n.44 (Tex. Crim. App. 2008) (citing cases holding that
there were no detentions when officers’ vehicles only partially blocked
defendants’ egresses); see also United States v. Mendenhall, 446
U.S. 544, 553–54, 100 S. Ct. 1870, 1877 (1980) (“[A] person is ‘seized’ only
when, by means of physical force or a show of authority, his freedom of
movement is restrained . . . [a]s long as the person . . . remains free to . .
. walk away, there has been no intrusion upon that person’s liberty[.]”).

          Finally,
even if the record showed that Appellant was restrained, under the facts before
us, his restraining was called for.  The code of criminal procedure authorizes
a person to make a citizen’s arrest for a breach of the peace committed within
that person’s view.  Tex. Code Crim. Proc. Ann. art. 14.01(a) (West 2005).  The
court of criminal appeals has held that citizens’ arrests for DWI are lawful when
(1) the citizen has probable cause to believe that another is driving while
intoxicated in his view, and (2) the commission of the offense, if not stopped,
poses an ongoing threat of violence or harm to that person or others.  Miles,
241 S.W.3d at 42; see Woods v. State, 152 Tex. Crim. 338, 213 S.W.2d 685,
687–88 (1948); see also McEathron v. State, 163 Tex. Crim. 619, 294
S.W.2d 822, 823–24 (1956) (upholding citizen’s arrest when citizen saw
defendant drive at high speed, drink from a bottle, strike the esplanade three
times, and run red lights); Ruiz v. State, 907 S.W.2d 600, 603–04 (Tex.
App.—Corpus Christi 1995, no pet.) (citing Woods and concluding that DWI
defendant committed breach of peace when he drove the wrong way down the highway,
placing “his own life and the lives of other motorists in danger”); Turner
v. State, 901 S.W.2d 767, 770–71 (Tex. App.—Houston [14th Dist.] 1995, pet.
ref’d) (relying on Woods and upholding a citizen’s arrest by a private
security officer for an offense involving a breach of the peace when
circumstances showed it was night, the apartment complex had previous incidents
of criminal activity, defendant acted suspiciously, gave citizen a false name,
and held up a handgun); Crowley v. State, 842 S.W.2d 701, 704 (Tex. App.—Houston
[1st Dist.] 1992, pet. ref’d) (relying on Woods and concluding that,
under particular circumstances, failure to stop and give information after
traffic accident was an offense involving a breach of the peace); Estes v.
State, 660 S.W.2d 873, 874–75 (Tex. App.—Fort Worth 1983, pet. ref’d)
(citing Woods and holding that, under the circumstances, obscene gesture
constituted “fighting words” and was an offense constituting breach of the
peace when defendant, a senior at Grand Prairie High School, had extended “his
middle finger of his right hand to Phillip M. Farris, principal of said school,
during the commencement exercises on May 29, 1981”).

          Here,
the evidence shows that Appellant appeared so intoxicated that he could not
manage to light a cigarette, that he had already collided with one vehicle, and
then pushed that vehicle forward, and that he was on his way to re-entering the
roadway where it was reasonable to believe that he posed a threat of harm to
others.  A citizen’s arrest would have been appropriate under the circumstances. 
See Miles, 241 S.W.3d at 42.

          We
hold that the trial court did not err by denying Appellant’s motion to suppress
evidence obtained as a result of the arrest, and we overrule Appellant’s first issue.

Breath
Sample

          In
his second issue, Appellant claims that he was falsely induced to provide a
breath sample because Officer Dees promised him that his car would be released
and not impounded if he did so.  Again, however, the record does not support
Appellant’s claim.  Officer Dees testified that although Appellant expressed
some concern about what would happen to his car, he agreed to provide a breath
sample and she did not make any promises.

          Specifically,
she testified on direct as follows:

Q.      Did you make
any promises to the Defendant in this case regarding if he took this test or
anything about if he passed this test something would happen to him?

 

A.      No, I did not.

 

Q.      Okay.  Did
the Defendant question you on what would happen if he gave a sample, of what
the ultimate conclusion would be?

 

A.      He was more
concerned about his car.  He asked what would happen to his car.

 

Q.      Did you
promise him his car wouldn’t get towed or anything like that if he passed the
test?

 

A.      No.  No, I
did not.

 

          On
cross, she testified as follows:

Q.      State’s
Exhibit No. 2 there’s a place for the accused person to sign if they refuse; is
that correct?

 

A.      Yes, sir, it
is.

 

Q.      And you had him
sign there, did you not?

 

A.      Yes, sir, I
did.

 

Q.      Because at
first he said he didn’t want to do that, didn’t he?

 

A.      No, sir.

 

Q.      Ma’am?

 

A.      No, sir.

 

Q.      So you just
had him sign it for the fun of it?

 

A.      No, sir.  I
made a mistake and I had him sign it.

 

Q.      And do you
recall telling him that if he took the test and passed it that you would assist
him in getting his vehicle released?

 

A.      No, sir, I
don’t recall that.

 

Q.      This was all
videotaped, was it not?

 

A.      Yes, sir, it
was.

 

Q.      This was
videotaped as well, was it not, when he talked to you about this?

 

A.      Yes, sir.

 

Q.      You do recall
now him asking about getting his car released if he took the test and passed
it?

 

A.      He just
mentioned if he was going to get his car once he passed the test.

 

Q.      And your
response was?

 

A.      “We’ll talk
about it when we get there.”

 

Q.      Indicating
that you would assist him?

 

A.      No, just we’ll
talk about the options whenever we get there.  I wasn’t going to say anything
until we knew the results.

 

          The
video referred to by Appellant’s counsel during his cross-examination of
Officer Dees was marked as State’s Exhibit 3.  During its publication to the
jury, the State asked Officer Dees these questions:

Q.      (BY MR. HILL) 
Officer Dees, it seems that the answer to your question on the breath test seemed
a little muffled.  What was the answer that you heard from the Defendant?

 

A.      “Yes.”

 

Q.      Okay. 
Meaning what?

 

A.      Yes, he would
submit to the breathalyzer test.

 

                    .
. . .

Q.      (BY MR. HILL:) 
What was that conversation about?  What did he ask you about?

 

A.      He was
concerned about his vehicle.  He was wanting to know what happened to his
vehicle.

 

Q.      Okay.  What
did happen to his vehicle?

 

A.      It was towed.

 

Q.      Did you
promise him that you would return his vehicle to him or his vehicle wouldn’t be
towed if he gave a breath specimen?

 

A.      No, I did
not.

 

                    .
. . .

          Q.      (BY
MR. HILL)  What was that statement that you made?

          A.      I
told him if he blew under .08 we would go from there.

Q.      Is that an
indication to you that he was going to go free if he blew under .08?

 

          A.      No.

          Q.      Just
that your investigation would be different?

          A.      Exactly.

          On
further cross-examination by Appellant, Officer Dees testified as follows:

Q.      Do you
remember talking or do you remember telling Mr. Dowell at the time just before
he took the test that you were going to see about - - talk to your supervisor
about getting his car released or something of that nature?

 

A.      No, sir, I
don’t recall that.

          Appellant
cites Erdman v. State, 861 S.W.2d 890 (Tex. Crim. App. 1993), and State
v. Sells, 798 S.W.2d 865 (Tex. App.—Austin 1990, no pet.), to argue that
his breath sample was “acquired under a false pretense.”  In both of those
cases, however, the defendant was given the proper statutory warnings but also
an extra-statutory warning that they would be jailed and charged with DWI if
they refused to submit to breath testing.  Erdman, 861 S.W.2d at 893–94;
Sells, 798 S.W.2d at 866.  Each of those cases involved
misrepresentations of direct statutory consequences, which required reversal. 
Here, in contrast, the record shows that Appellant was properly advised of the
direct statutory consequences of a refusal and there is nothing in the record
to show that he was misled or advised improperly.

          Moreover,
viewing the evidence in the light most favorable to the trial court’s ruling, there
is no evidence that Officer Dees made any promises to Appellant in exchange for
his submitting to a breath test.  Accordingly, we hold that the trial court
acted within its discretion to find that Appellant was not induced by any
promise to provide a breath sample and that it properly denied the motion to
suppress.  We overrule Appellant’s second issue.

Conclusion

          Having
overruled both of Appellant’s issues, we affirm the judgment of the trial
court.

 

 

 

LEE GABRIEL

JUSTICE

 

PANEL: 
McCOY,
MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  June 9, 2011









[1]See Tex. R. App. P. 47.4.





[2]Compare Randall’s
Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644–45 (Tex. 1995) (“A
detention may be accomplished by violence, by threats, or by any other means
that restrains a person from moving from one place to another.”) with Tex.
Penal Code Ann. § 20.02(a) (West 2003) (“A person commits an offense if he
intentionally or knowingly restrains another person.”).





[3]Susan testified, “He could
have backed out.  There wasn’t anybody else in line.”