

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00034-CR

CHAD RAYMOND DOWELL                                    APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

## FROM THE COUNTY COURT AT LAW OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Chad Raymond Dowell appeals his conviction for driving while intoxicated (DWI), contending in two issues that the trial court abused its discretion by denying his motions to suppress because (1) his arrest resulted from his false imprisonment by citizens at a fast food drive-thru, and (2) he

---

[1]See Tex. R. App. P. 47.4.

submitted to breath testing only because he was promised his car would not be impounded if he did. We affirm.

## Factual and Procedural Background

Around three o'clock one morning, Susan Lowe and Vickie Sansom were at a Whataburger drive-thru in Susan's small Ford pickup when Appellant's Lincoln Town Car struck them from behind. Vickie turned around and Susan looked in the rearview mirror to see if Appellant would come out to exchange insurance information, but he remained in his car.

Vickie thought he looked drunk. She noticed that he had trouble lighting a cigarette; his head bobbed up and down as he vainly tried to join tip and flame. She saw him drop the cigarette and try to pick it up. Susan saw him grope toward the floorboard. Vickie called 911.

Appellant did not retreat from Susan's bumper after colliding with it; instead, he pushed forward. Susan held her foot down on the brake pedal to keep her truck at the drive-thru window. Although Vickie told the 911 operator that they would try to stall Appellant as long as they could, and although their order was not yet ready, Susan pulled around to the parking lot to wait for it there. They watched as the Lincoln paused at the drive-thru window. When it emerged, Susan took down the license plate number.

Responding to the 911 call, patrol cars converged at the Whataburger. Granbury Police Officer Brandi Dees drove into the front of the parking lot as Appellant rolled out the back. As other officers arrived, Susan and Vickie pointed

2

them in that direction.  Officer Dees followed Appellant to the highway and pulled him over after he failed to signal a left turn at the intersection.

Appellant's eyes were red and glassy, and he smelled heavily of cologne. He fumbled in his glove box for proof of insurance when Officer Dees asked him for it.  Unable to produce it, and unable to provide a straight answer about whose car he was in, Appellant offered that it was "a complicated matter."  Officer Dees asked him if he had been in an accident at the Whataburger.  He said no.  She had Appellant step out of the car.

When Appellant exited the car, Officer Dees detected the odor of an alcoholic beverage beneath that of cologne and Whataburger.  Appellant displayed six out of six clues on the horizontal gaze nystagmus test (HGN), failed the walk and turn and the one-leg stand tests, and had a $55 bar receipt stuffed in his pocket.  Officer Dees arrested him for DWI and took him to jail.

At the jail, after receiving the statutory DWI warning, Appellant consented to provide a breath sample.  While filling out the paperwork, however, Officer Dees mistakenly had Appellant sign on a line indicating that he had refused.  She did not, however, check the box indicating a breath-test refusal.

Appellant's car had been towed after his arrest.  Appellant asked Officer Dees whether he would get it back after he passed the breath test.  She replied that if he blew below the legal limit, they "would go from there."  Appellant provided two breath specimens.  The first came back with an alcohol concentration of 0.156; the second, 0.164.

3

The county attorney charged Appellant with DWI. Appellant filed a document entitled, "Notice of Intent to Object to Illegal Search and Memorandum and Cases on Said Motion," and seeking to "suppress the alleged controlled substance, statements, and other items seized at the time of his detention and arrest." Just before trial, Appellant's attorney explained to the trial court that he intended the document to serve as both a motion in limine and a motion to suppress. He argued that Appellant submitted to the breath test involuntarily and that his arrest was based on illegal conduct. The trial court denied the motion to the extent it sought suppression of the breath test results and carried the issue of the propriety of the arrest with the evidence presented at trial. After the State rested, the trial court denied the suppression motions in toto.

The jury returned a verdict of guilty. The trial court sentenced Appellant to six months in jail probated for twelve months, a $1,200 fine, and restitution to Susan Lowe for the damage to her pickup truck.

Appellant contends in two issues on appeal that the trial court abused its discretion by denying his motions to suppress.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v.*

4

*State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

**Detention**

In his first issue, Appellant does not specify precisely what evidence the trial court should have suppressed; rather, he seems to complain generally of all

5

evidence obtained after his trip to Whataburger, where he claims he was falsely imprisoned at the drive-thru.

Nor does Appellant assert that Susan Lowe and Vickie Sansom violated any statute or constitutional provision in the drive-thru; instead, he relies on *Wal-Mart Stores, Inc. v. Cockrell*, 61 S.W.3d 774 (Tex. App.—Corpus Christi 2001), a civil case, to argue that they falsely imprisoned him there and thus rendered illegal his subsequent arrest. In so doing, however, he fails to tie his allegation to the exclusionary rule set out in code of criminal procedure article 38.23, which excludes evidence obtained in violation of a statute or constitutional provision, but which is not invoked by a common law tort. *See Miles v. State*, 241 S.W.3d 28, 37 n.34 (Tex. Crim. App. 2007) (citing *Crowell v. State*, 147 Tex. Crim. 299, 180 S.W.2d 343, 347 (1944)); *Carroll v. State*, 911 S.W.2d 210, 221 (Tex. App.—Austin 1995, no pet.); *Delosreyes v. State*, 853 S.W.2d 684, 689 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *see also Rocha v. State*, 16 S.W.3d 1, 14 (Tex. Crim. App. 2000) (discussing commentators' views that "laws of the State of Texas," as that is used in article 38.23, is limited to statutes).

Moreover, even if a civil cause of action could implicate article 38.23, or if Appellant had relied on the penal code offense of unlawful restraint instead of common-law false imprisonment, both require proof of restraint, and the record here does not show that Appellant was ever restrained.[2] To the contrary, the

---

[2]*Compare Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644–45 (Tex. 1995) ("A detention may be accomplished by violence, by threats, or by any

record shows that no one was behind Appellant when he entered the drive-thru and that the sole vehicle in front of him, Susan's truck, got out of his way. The evidence shows that Appellant rolled into a fast food drive-thru, collided with Susan's truck, and then bullied ahead, forcing her and Vickie to wait for their order in the parking lot while he continued on his way.[3] *See State v. Garcia-Cantu*, 253 S.W.3d 236, 246, n.44 (Tex. Crim. App. 2008) (citing cases holding that there were no detentions when officers' vehicles only partially blocked defendants' egresses); *see also United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S. Ct. 1870, 1877 (1980) ("[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained . . . [a]s long as the person . . . remains free to . . . walk away, there has been no intrusion upon that person's liberty[.]").

Finally, even if the record showed that Appellant was restrained, under the facts before us, his restraining was called for. The code of criminal procedure authorizes a person to make a citizen's arrest for a breach of the peace committed within that person's view. Tex. Code Crim. Proc. Ann. art. 14.01(a) (West 2005). The court of criminal appeals has held that citizens' arrests for DWI are lawful when (1) the citizen has probable cause to believe that another is

---

other means that restrains a person from moving from one place to another.") *with* Tex. Penal Code Ann. § 20.02(a) (West 2003) ("A person commits an offense if he intentionally or knowingly restrains another person.").

[3]Susan testified, "He could have backed out. There wasn't anybody else in line."

driving while intoxicated in his view, and (2) the commission of the offense, if not stopped, poses an ongoing threat of violence or harm to that person or others. *Miles*, 241 S.W.3d at 42; *see Woods v. State*, 152 Tex. Crim. 338, 213 S.W.2d 685, 687–88 (1948); *see also McEathron v. State*, 163 Tex. Crim. 619, 294 S.W.2d 822, 823–24 (1956) (upholding citizen's arrest when citizen saw defendant drive at high speed, drink from a bottle, strike the esplanade three times, and run red lights); *Ruiz v. State*, 907 S.W.2d 600, 603–04 (Tex. App.— Corpus Christi 1995, no pet.) (citing *Woods* and concluding that DWI defendant committed breach of peace when he drove the wrong way down the highway, placing "his own life and the lives of other motorists in danger"); *Turner v. State*, 901 S.W.2d 767, 770–71 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (relying on *Woods* and upholding a citizen's arrest by a private security officer for an offense involving a breach of the peace when circumstances showed it was night, the apartment complex had previous incidents of criminal activity, defendant acted suspiciously, gave citizen a false name, and held up a handgun); *Crowley v. State*, 842 S.W.2d 701, 704 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (relying on *Woods* and concluding that, under particular circumstances, failure to stop and give information after traffic accident was an offense involving a breach of the peace); *Estes v. State*, 660 S.W.2d 873, 874– 75 (Tex. App.—Fort Worth 1983, pet. ref'd) (citing *Woods* and holding that, under the circumstances, obscene gesture constituted "fighting words" and was an offense constituting breach of the peace when defendant, a senior at Grand

8

Prairie High School, had extended "his middle finger of his right hand to Phillip M. Farris, principal of said school, during the commencement exercises on May 29, 1981").

Here, the evidence shows that Appellant appeared so intoxicated that he could not manage to light a cigarette, that he had already collided with one vehicle, and then pushed that vehicle forward, and that he was on his way to re-entering the roadway where it was reasonable to believe that he posed a threat of harm to others. A citizen's arrest would have been appropriate under the circumstances. *See Miles*, 241 S.W.3d at 42.

We hold that the trial court did not err by denying Appellant's motion to suppress evidence obtained as a result of the arrest, and we overrule Appellant's first issue.

**Breath Sample**

In his second issue, Appellant claims that he was falsely induced to provide a breath sample because Officer Dees promised him that his car would be released and not impounded if he did so. Again, however, the record does not support Appellant's claim. Officer Dees testified that although Appellant expressed some concern about what would happen to his car, he agreed to provide a breath sample and she did not make any promises.

Specifically, she testified on direct as follows:

Q. Did you make any promises to the Defendant in this case regarding if he took this test or anything about if he passed this test something would happen to him?

9

A. No, I did not.

Q. Okay. Did the Defendant question you on what would happen if he gave a sample, of what the ultimate conclusion would be?

A. He was more concerned about his car. He asked what would happen to his car.

Q. Did you promise him his car wouldn't get towed or anything like that if he passed the test?

A. No. No, I did not.

On cross, she testified as follows:

Q. State's Exhibit No. 2 there's a place for the accused person to sign if they refuse; is that correct?

A. Yes, sir, it is.

Q. And you had him sign there, did you not?

A. Yes, sir, I did.

Q. Because at first he said he didn't want to do that, didn't he?

A. No, sir.

Q. Ma'am?

A. No, sir.

Q. So you just had him sign it for the fun of it?

A. No, sir. I made a mistake and I had him sign it.

Q. And do you recall telling him that if he took the test and passed it that you would assist him in getting his vehicle released?

A. No, sir, I don't recall that.

Q. This was all videotaped, was it not?

10

A.      Yes, sir, it was.

Q.      This was videotaped as well, was it not, when he talked to you about this?

A.      Yes, sir.

Q.      You do recall now him asking about getting his car released if he took the test and passed it?

A.      He just mentioned if he was going to get his car once he passed the test.

Q.      And your response was?

A.      "We'll talk about it when we get there."

Q.      Indicating that you would assist him?

A.      No, just we'll talk about the options whenever we get there.  I wasn't going to say anything until we knew the results.

The video referred to by Appellant's counsel during his cross-examination

of Officer Dees was marked as State's Exhibit 3.  During its publication to the

jury, the State asked Officer Dees these questions:

Q.      (BY MR. HILL)  Officer Dees, it seems that the answer to your question on the breath test seemed a little muffled.  What was the answer that you heard from the Defendant?

A.      "Yes."

Q.      Okay.  Meaning what?

A.      Yes, he would submit to the breathalyzer test.

        . . . .

Q.      (BY MR. HILL:)  What was that conversation about?  What did he ask you about?

11

A.     He was concerned about his vehicle.  He was wanting to know what happened to his vehicle.

Q.     Okay.  What did happen to his vehicle?

A.     It was towed.

Q.     Did you promise him that you would return his vehicle to him or his vehicle wouldn't be towed if he gave a breath specimen?

A.     No, I did not.

. . . .

Q.     (BY MR. HILL)  What was that statement that you made?

A.     I told him if he blew under .08 we would go from there.

Q.     Is that an indication to you that he was going to go free if he blew under .08?

A.     No.

Q.     Just that your investigation would be different?

A.     Exactly.

On further cross-examination by Appellant, Officer Dees testified as follows:

Q.     Do you remember talking or do you remember telling Mr. Dowell at the time just before he took the test that you were going to see about - - talk to your supervisor about getting his car released or something of that nature?

A.     No, sir, I don't recall that.

Appellant cites *Erdman v. State*, 861 S.W.2d 890 (Tex. Crim. App. 1993), and *State v. Sells*, 798 S.W.2d 865 (Tex. App.—Austin 1990, no pet.), to argue

that his breath sample was "acquired under a false pretense." In both of those cases, however, the defendant was given the proper statutory warnings but also an extra-statutory warning that they would be jailed and charged with DWI if they refused to submit to breath testing. *Erdman*, 861 S.W.2d at 893–94; *Sells*, 798 S.W.2d at 866. Each of those cases involved misrepresentations of direct statutory consequences, which required reversal. Here, in contrast, the record shows that Appellant was properly advised of the direct statutory consequences of a refusal and there is nothing in the record to show that he was misled or advised improperly.

Moreover, viewing the evidence in the light most favorable to the trial court's ruling, there is no evidence that Officer Dees made any promises to Appellant in exchange for his submitting to a breath test. Accordingly, we hold that the trial court acted within its discretion to find that Appellant was not induced by any promise to provide a breath sample and that it properly denied the motion to suppress. We overrule Appellant's second issue.

13

## Conclusion

Having overruled both of Appellant's issues, we affirm the judgment of the trial court.

LEE GABRIEL
JUSTICE

PANEL:  McCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 9, 2011